## Richmond

LARRY I. VASS v. COMMONWEALTH OF VIRGINIA.

April 22, 1974.

Record No. 730369.

Present, All the Justices.

*Murray J. Janus; Denis C. Englisby (Bremner, Byrne & Baber,* on brief), for plaintiff in error.

*Wilburn C. Dibling, Jr., Assistant Attorney General (Andrew P. Miller, Attorney General, on brief), for defendant in error.*

COCHRAN, J., delivered the opinion of the court.

Larry I. Vass was tried under an indictment charging him with grand larceny of historical documents belonging to the Commonwealth of Virginia. The jury found him guilty as charged and fixed his punishment at a fine of $1,000. The trial court entered judgment on the jury verdict. We granted Vass a writ of error to review the action of the trial court in overruling Vass's motion to suppress certain evidence seized without a warrant and admitted into evidence against him.

On November 12, 1971, Vass sold to William S. Trevett, Jr., a stamp dealer, 50 stamped letters for $100 and 20 stampless covers—letters mailed prior to the use of postage stamps and bearing postmasters' markings of the postal rates and places of origin—for $500. Certain of the stampless covers were "free franked" by government officials, the most valuable cover bearing the frank of Alexander Hamilton and the address of the Governor of Virginia. Trevett sold the 20 stampless covers to Robert Mayo, a stamp collector and Director of the Valentine Museum in Richmond; he sent three of the stamped letters to New York for sale at auction and sold the rest to various purchasers.

On January 4, 1972, Vass returned to Trevett's stamp shop with 45 stampless covers, which Trevett purchased for $1,100. Trevett delivered 43 of the covers to Mayo, who purchased 14 or 15 and took the rest on approval. Trevett sent the other two covers to New York for sale at auction.

On January 19, 1972, in response to an advertisement Vass telephoned to John Shanes, a stamp collector and part-time employee of Trevett, and discussed the sale of additional rare documents owned by Vass. In a second telephone conversation on January 22, 1972, Shanes agreed to take on consignment 46 stampless covers, including a letter written by Thomas Jefferson, another by James Madison, and a third by Benjamin Franklin. As prearranged with Vass, Shanes took delivery of the documents from Vass's wife, Patricia, at the Lee-Davis School in Hanover County, where she taught chemistry. Shanes then took the documents to Trevett for advice as to their value.

Meanwhile, Mayo became suspicious of the ownership of the documents in his possession and discussed them by telephone with Dr. Louis H. Manarin, the State Archivist, whose office was in the State Library. On January 27, 1972, a police investigation was initiated.

Detective A. T. Norton, of the Henrico County Police Department, and Investigator M. L. Winer, of the Virginia State Police, retrieved the documents consigned to Shanes and exhibited them to Randolph Church, the State Librarian and Manarin's superior, who identified them as state property. The officers then arranged for Shanes to return the documents to Mrs. Vass under police surveillance.

On January 31, 1972, Norton, Winer and Church observed Shanes enter the Lee-Davis School. After a short time Shanes left the school, and subsequently a young woman, later identified as Mrs. Vass, left the building carrying what appeared to be the same "materials" that Shanes had taken into the school. She entered an automobile that the officers had ascertained was registered in the names of the Vasses and drove from the school parking lot.

The officers followed the Vass car and stopped it in Henrico County by turning on the siren of their unmarked vehicle. Norton and Winer identified themselves as police officers. Norton read Mrs. Vass her rights as set forth in *Miranda* v. *Arizona*, 384 U.S. 436 (1966), and informed her that the documents lying on the seat beside her were property stolen from the State Library. Mrs. Vass picked up a leatherette folder and handed it to Norton. It contained stampless covers. She also handed Norton, at his request, two transparent glassine folders containing documents that he had seen on the seat.

Mrs. Vass was never told that she was under arrest. When she asked the officers to explain their actions, they offered to discuss the matter with her at the Henrico County Police station, to which she agreed. She drove there in her car, accompanied by Norton and followed by Winer and Church in the police car. Mrs. Vass testified at the suppression hearing that she told the officers at the police station that she did not want to make a statement and that she wished to talk with an attorney. She said that the officers threatened that unless she cooperated they would arrest her husband at the Medical College of Virginia, where he was attending classes in the Dental School. Mrs. Vass then signed a written waiver of her *Miranda* rights and gave a statement in response to questions. She later gave written consent for the officers to search the Vass home, which consent she testified was induced by the officers' threats to arrest her husband and "to tear the

house apart" after obtaining a search warrant. Winer denied that any such threats were made.

After Mrs. Vass consented to the search, she drove alone to her house, followed by the two officers and Church. Upon arrival, Mrs. Vass went to a closet in her husband's study, brought out a suitcase full of documents and gave it to the officers. The unlocked suitcase was opened in her presence, and inside were found hundreds of documents, only six of which were identified as property of the State Library. Mrs. Vass testified that she never used the study and entered the room only to clean it.

The trial court denied the motion to suppress the evidence seized from the Vass automobile and from the suitcase. The documents seized in the car were held to be admissible under the "moving vehicle" exception to the warrant requirement. Although the trial court found that Mrs. Vass's consent to the search of the house was "primarily motivated by a desire to prevent the arrest of her husband," the court held that the consent was valid. The court reasoned, citing *State* v. *Rye*, 2 Wash. App. 920, 471 P.2d 96 (1970), that Mrs. Vass had bowed to events rather than succumbed to duress. The court also observed that the officers arrived at the Vass home after 5:00 p.m., at which time Mrs. Vass had no reason to fear that her husband would be arrested at school, but that she did not revoke her consent. The court found that Mrs. Vass had power to consent to the seizure of the documents in the suitcase because these documents could not be considered the "personal effects" of her husband. In reaching the conclusion that Mrs. Vass's consent was valid, the court relied on her access to the study, her knowledge of the location and contents of the suitcase, and her failure to object to the officers that she had no authority to give them the suitcase.

The warrantless seizure of documents from Mrs. Vass's car was lawful only if it came within some exception to the warrant requirement. Under the Fourth and Fourteenth Amendments to the United States Constitution warrantless searches or seizures are *per se* unreasonable, subject only to a few specifically established and well defined exceptions. *Schneckloth* v. *Bustamonte*, 412 U.S. 218, 219 (1973); *Morris* v. *Commonwealth*, 208 Va. 331, 334, 157 S.E.2d 191, 194 (1967); *see Lugar* v. *Commonwealth*, 214 Va. 609, 202 S.E.2d 894 (1974). However, one established exception is that police officers may stop and search a moving vehicle if they have probable cause to believe that the vehicle contains objects subject to seizure. *Almeida-Sanchez* v. *United States*, 413 U.S. 266, 269-70 (1973); *Chambers* v.

*Maroney,* 399 U.S. 42, 48-52, *rehearing denied,* 400 U.S. 856 (1970); *McKoy* v. *Commonwealth,* 212 Va. 224, 225, 183 S.E.2d 153, 155 (1971). This exception to the warrant requirement was originally based on exigent circumstances arising from the mobility of motor vehicles. *Chambers* v. *Maroney, supra,* at 51; *Carroll* v. *United States,* 267 U.S. 132 (1925). But in *Cady* v. *Dombrowski,* 413 U.S. 433, 442 (1973), the court stated that the exception is also based in part on extensive, often non-criminal contact between police and motor vehicles.

■ Vass asserts that the moving vehicle exception is inapplicable because the facts of this case, considered as a whole, reveal no "exigent circumstances." He argues that the warrantless seizure was unnecessary because the officers had possession of the documents prior to returning them to Mrs. Vass. He notes that the officers had no indication that the Vasses intended to escape the reach of a warrant by fleeing the jurisdiction.

We hold that exigent circumstances justified the warrantless seizure. Although the officers could, of course, have retained possession of the documents consigned by Vass to Shanes, they also could reasonably have followed their plan to have the documents returned to Mrs. Vass under police surveillance. This procedure may have been used to enable the police to determine whether Mrs. Vass or others, in addition to Vass, claimed ownership of the papers. The officers can be excused for not having obtained a search warrant for the vehicle because they would not necessarily have known that Mrs. Vass would transport the documents on that particular trip. She might have hidden them or transferred them to a confederate before leaving the school grounds. Once Mrs. Vass drove off with what appeared to be the stolen documents, the officers had no time to obtain a warrant without taking the unjustifiable risk that Mrs. Vass might destroy the documents or remove them to a place unknown to the officers.

■ The trial court found that the officers had probable cause to seize the documents from Mrs. Vass's car. We agree. The officers observed Mrs. Vass leave the school with what appeared to be the same stolen "materials" that Shanes had entered the school to deliver to her. Even if we assume, arguendo, that this fact did not provide probable cause for searching Mrs. Vass's car, it did justify the officers' action in stopping the vehicle and detaining her briefly for questioning. Such investigative stops are permissible, even where police have no probable cause to arrest, if officers can point to "articulable" circumstances which give them reason to think that a crime is being

committed. *See Terry* v. *Ohio,* 392 U.S. 1 (1968). Here the officers had reason to suspect that Mrs. Vass was acting in furtherance of the crime of grand larceny or the crime of receiving stolen property.

After the officers had lawfully stopped Mrs. Vass's car for investigative purposes, they observed on the seat beside her a leatherette case similar to one which they had seen Shanes using to carry documents for delivery to Mrs. Vass. The officers also observed on the seat the two transparent glassine envelopes containing documents. Moreover, when the officers accused Mrs. Vass of having stolen documents in her possession, she picked up the leatherette folder and asked, "These?", thus confirming the officers' belief that the case contained stolen documents returned to her by Shanes. These circumstances were sufficient to give the officers probable cause for the seizure of the leatherette case and glassine envelopes from Mrs. Vass's vhicle.

■ We will assume, without deciding, that the motion to suppress should have been granted as to the documents seized in Vass's suitcase. As grounds for the motion to suppress this evidence Vass asserts that his wife lacked authority to consent to the seizure of his suitcase, that the consent was involuntary, or that the consent was tainted by violation of Mrs. Vass's *Miranda* rights. But even if any of these arguments is correct, the error in admitting these six documents into evidence would be harmless beyond a reasonable doubt and therefore not reversible. *Chapman* v. *California,* 386 U.S. 18, *rehearing denied,* 386 U.S. 987 (1967); *Reid* v. *Commonwealth,* 213 Va. 790, 195 S.E.2d 866 (1973); *Hall* v. *Commonwealth,* 213 Va. 736, 195 S.E.2d 882 (1973).

There was overwhelming evidence, exclusive of the state-owned documents found in Vass's suitcase, that Vass had in his possession property belonging to the Commonwealth of Virginia. Of the 20 stampless covers sold by Vass to Trevett on November 12, 1971, 19 were identified by Manarin as state property. Eight of the documents were identified by means of the Calendar of Virginia State Papers, which lists state-owned letters in chronological order and provides for each the name of the addressee, the name of the sender, and sometimes a synopsis of the contents. Some of these documents also appeared in Library records of documents which had been copied for the benefit of other libraries. Eleven other documents, although not listed in the Calendar, were, in Manarin's opinion, state property because letters having the same addressees were missing from the State Library, in many cases from storage boxes which Library records showed Vass had signed for and taken to the reading room.

The three stamped covers which Trevett had purchased from Vass and forwarded to New York for sale were identified by Manarin as state property on the basis of Calendar listings.

Of the 45 stampless covers sold by Vass to Trevett on January 4, 1972, 43 were identified by Manarin as state property. The Calendar of Virginia State Papers listed 29 of these documents, some of which had also been copied. Library records indicated that two documents, although not appearing on the Calendar, had been copied. Manarin testified that twelve other documents, although not calendared or copied, had the same addressees as letters missing from the State Library, and were, in his opinion, state-owned.

Seized in the Vass car were 46 stampless covers, of which 27 were identified by Manarin as state-owned. The letters from Franklin, Jefferson, and Madison had been both calendared and copied. Of the 43 additional stampless covers, the Calendar of Virginia State Papers listed 17, some of which had been copied. Seven other documents had the same addressees as letters missing from the State Library and were, in Manarin's opinion, state property.

Thus, the record shows that 92 state-owned documents were introduced into evidence in addition to the six state-owned documents found in Vass's suitcase. Of the documents for which Library records provided specific identification—documents calendared or copied—62 were introduced into evidence in addition to four from Vass's suitcase that were so identified. Vass's defense was not based primarily on a denial of state ownership of the documents but on what he maintained was his innocent acquisition of them. The jury, as it had a right to do under the evidence, declined to believe Vass's explanation. Under these circumstances we hold that Vass was not prejudiced by any error of the trial court in admitting into evidence the six state-owned documents seized when his suitcase was opened.

For the reasons stated the judgment of the trial court is

*Affirmed.*