## Richmond

# PAUL C. THIMS v. COMMONWEALTH OF VIRGINIA

June 10, 1977.

Record No. 761248.

Present: All the Justices.

*Joel A. DeBoe (Kesten & DeBoe,* on brief), for plaintiff in error.

*Alan Katz, Assistant Attorney General (Anthony F. Troy, Attorney General,* on brief), for defendant in error.

COCHRAN, J., delivered the opinion of the Court.

In a jury trial, Paul C. Thims was found guilty of statutory burglary and larceny of a Sony stereo receiver, and his punishment was fixed at confinement in jail for nine months for

each offense. On May 26, 1976, the trial court entered judgment on the verdict, and ordered that the sentences run concurrently. We have limited Thims's appeal to the question whether the stereo, admitted into evidence over his objection, was the product of a warrantless search and seizure which violated his rights under the Fourth Amendment and the statutes of Virginia.

After conducting two pre-trial hearings as to the circumstances under which the stereo was seized without a warrant, the trial court overruled Thims's motion to suppress the evidence. We review the evidence presented to the trial court by the Commonwealth in justification of the warrantless seizure.

On October 6, 1975, Officer Michael J. Dwyer, of the Arlington County Police Department, investigated a burglary and larceny reported by Phyllis Dorsey to have occurred at the Dorsey residence. When he arrived at 6:30 p.m. Dwyer viewed the point of entry and ascertained from Miss Dorsey that, among other items, her Sony stereo receiver had been stolen and that she suspected Thims and his sister, Rhonda, of having committed the crimes. Later in the evening Miss Dorsey reported to Dwyer that several of her personal checks had also been stolen.

About 7:45 to 8:00 p.m. on the same evening Thims was arrested in the City of Falls Church for operating an automobile on a revoked driver's permit. A set of car keys, which did not fit the car he was driving when arrested, was taken from him. Shortly thereafter Susan Graham, a juvenile who had been talking to Thims in his car, was arrested for reasons which are not clear in the record, although initially she gave the officers false information as to her identity. Two other juveniles, Susan Dorsey, sister of Phyllis Dorsey, and Rhonda Thims, sister of the defendant, were also taken into custody at the Falls Church Police Station.

Dwyer, arriving there about midnight, talked to the arresting officers, observed a receipt, taken from Susan Graham's purse, for the purchase of a Ford Thunderbird, the car keys taken from Thims, and two of Phyllis Dorsey's checks, and interviewed Susan Graham and Susan Dorsey. Susan Graham told him that during the preceding afternoon she had seen a stereo and some checks in Thims's car, and that Thims had said "that he was going back to the Dorsey home to try to pick up some more

items." Dwyer was informed by one of the girls that Thims had attempted without success to pawn the stereo to obtain money to buy a 1962 Thunderbird. Susan Dorsey stated that Thims had persuaded her to forge the signature of her sister, Phyllis, on a check for $45 which she gave to Thims, and that Thims passed the check in partial payment for the Thunderbird. After Thims had purchased the Thunderbird, which was blue in color, Susan Dorsey followed his instructions by placing the stereo in the trunk of this vehicle. The girls said that Thims, using license tags from his mother's car, had driven the Thunderbird to the Thims residence in Arlington County and parked it in the driveway.

Dwyer's interviews with Graham and Dorsey were typed by approximately 5:10 a.m. At 6:30 a.m. Dwyer and another officer undertook to transport the girls to the Northern Virginia Detention Home in Alexandria, arrived shortly at 7:00 a.m., delivered the juveniles into the custody of the authorities at that facility, and returned to the Arlington County Police Department at 9:00 a.m. About ten minutes later Dwyer proceeded to the Thims residence, where he saw, from the street, a 1962 blue Thunderbird, bearing no license plates and no inspection sticker, in the driveway. Dwyer walked into the driveway, opened an unlocked door of the car, obtained the vehicle identification number, and tried to ascertain from the Division of Motor Vehicles the ownership of the automobile. It was reported to him that the car was not registered in Virginia, Maryland, or the District of Columbia.

Believing that the car had been purchased with stolen and forged checks and was the fruit of a crime, that it may have been stolen, and that it contained stolen property, Dwyer seized the Thunderbird and made a limited inventory search during which he unlocked the trunk with the set of keys that had been taken from Thims and seized Phyllis Dorsey's Sony stereo which he found therein. As far as he knew Thims was in jail at this time. While Dwyer was in the driveway, Thims's mother came out of the house. She did not ask Dwyer to leave, and Dwyer did not ask her permission to search or remove the car. Upon completing his search, Dwyer had the Thunderbird towed to the police property yard.

■ Under the Fourth Amendment a warrantless search or seizure is per se unreasonable. *See Katz* v. *United States,* 389

U.S. 347, 357 (1967). This well established doctrine, extended to the states under the Fourteenth Amendment, is subject to exceptions. One exception permits law enforcement officers with probable cause to stop a moving vehicle and make a warrantless seizure and search. *Chambers* v. *Maroney,* 399 U.S. 42 (1970), *rehearing denied,* 400 U.S. 856 (1970); *Vass* v. *Commonwealth,* 214 Va. 740, 204 S.E.2d 280 (1974). We must, therefore, determine whether the seizure and search in the present case comes within one of the exceptions to the general rule requiring a warrant.

The trial court found from the evidence that Dwyer had the right to seize the Thunderbird because it was in "plain view" and he had probable cause to believe that the car itself was evidence of a crime. The court further found that the officer had the right to conduct the ensuing inventory search in order to protect the property owner and the police.

Thims contends that under *Coolidge* v. *New Hampshire,* 403 U.S. 443 (1971), a combination of "plain view" and probable cause is insufficient to justify the warrantless seizure and search of an automobile parked in the owner's driveway. We agree that the plurality opinion in *Coolidge* states unequivocally that "plain view" alone is never sufficient to justify the warrantless seizure of evidence and that no amount of probable cause can justify a warrantless search or seizure, absent exigent circumstances. 403 U.S. at 468.

In *Lugar* v. *Commonwealth,* 214 Va. 609, 202 S.E.2d 894, (1974), we assumed, without deciding, that the plurality opinion in *Coolidge* had precedential effect. We therefore held that law enforcement officers lawfully on private property to search for a suspect could not seize articles in plain view which, though evidence of a crime, the officers did not come upon inadvertently. We believe, however, that the inadvertence requirement of *Coolidge* is inapplicable in the present case where the law enforcement officer standing outside the protected zone of private property observed the Thunderbird parked in the Thims driveway. Thus, in *Cook* v. *Commonwealth,* 216 Va. 71, 216 S.E.2d 48 (1975), we held that a law enforcement officer did not engage in a search in the constitutional sense when he stood in a public street, looked into a car parked at the curb, and observed therein in open view what he had probable cause to believe was evidence of a crime. There, a majority of the Court,

concluding that it had been conceded that the seizure was valid if there was no unlawful search, found it unnecessary to consider the seizure. Even without this concession, however, as the concurring opinion of Mr. Justice Poff made clear, the warrantless search and seizure were valid because the officer had probable cause to believe the car contained contraband, and additionally, there were exigent circumstances, if any were required. The police knew that, although Cook was in custody, his car was operable, his girl friend who shared his apartment might have keys to the car, and even if she did not have keys, she had access to the vehicle.

Thims, relying primarily on *Coolidge*, insists that Dwyer had no probable cause to seize the Thunderbird, and that there were no exigent circumstances. We do not agree. The facts in *Coolidge* are distinguishable. There, the officers knew about Coolidge's car for some days and described it in a search warrant which was found to be defective; the car was regularly parked in his driveway; officers guarded the house, so that no access to the car was possible; Coolidge was arrested and removed; his wife was transported by the police to another town; and the Coolidge premises were guarded throughout the night by policemen. There was no evidence that the car was being used for an illegal purpose or that it contained contraband or stolen property. Moreover, the officers had made a valid intrusion on private property to arrest Coolidge when they seized the automobile, and their discovery of the vehicle, therefore, was not inadvertent.

In the present case, Dwyer had received information from two girls, 16 years of age at the time of trial, one of whom had initially lied to the police about her identity, that the stolen stereo had been placed in the trunk of a blue 1962 Thunderbird which had been purchased with a stolen and forged check, and that the Thunderbird had been parked in the driveway of the Thims's residence. The officer was thus getting information, not from informants whose reliability was known, *McKoy* v. *Commonwealth*, 212 Va. 224, 183 S.E.2d 153 (1971), or from citizen-informers whose reliability reasonably might be assumed, *Guzewicz* v. *Commonwealth*, 212 Va. 730, 187 S.E.2d 144 (1972), but from two juveniles who were admittedly infatuated with Thims, a man 22 years of age, who were to some extent implicated with him, and whose reliability was not

known. It was only when Dwyer saw from the street that a blue 1962 Thunderbird, as described by the girls, bearing no license plates, was parked in the driveway of the Thims's residence, that the officer, from his own investigation, had verification of the reliability of his information and probable cause to seize and search the vehicle.

Having probable cause Dwyer was then confronted for the first time with a vehicle which could be quickly moved. Although Thims and his sister Rhonda, as well as Susan Graham and Susan Dorsey, had been taken into custody the previous evening, along with what turned out to be keys to the Thunderbird, Dwyer had no way of knowing who else might have keys to the vehicle. At least two other persons, it could reasonably be inferred, might have had motives to remove it while Dwyer took additional time to get a warrant. Thims's mother occupied the premises and was present. Additionally, the previous owner of the car might have sought to regain possession of it. Moreover, Thims himself might have telephoned to a friend, relative, or confederate to remove the car, or he might have been released on bail, and, during Dwyer's absence to obtain a warrant, removed the car himself. So there were exigent circumstances.

Thims argues that Dwyer had ample time to obtain a search warrant. But this presupposes probable cause that did not arise until Dwyer saw the Thunderbird. Dwyer explained the reasons for his delay in pursuing his investigation. It was his responsibility, as the officer investigating the burglary and larceny case, to transport the juvenile suspects to the detention center. He fulfilled this duty shortly after the statements of Graham and Dorsey had been completed, and proceeded, without undue delay, to the Thims residence. There is no evidence that Dwyer, after finding the Thunderbird, had time to obtain a warrant. Exigent circumstances may arise at any time, and the fact that a warrant might have been obtained earlier does not negate the possibility that prompt police action may be required. *Cardwell* v. *Lewis*, 417 U.S. 583 (1974). *See Patty* v. *Commonwealth*, 218 Va. 150, 235 S.E.2d 437 (1977) (this day decided).

Upon verification of his information Dwyer had probable cause to believe that the car was the fruit of a crime, that it might be stolen, and that it contained stolen property. He then for the first time had probable cause to seize and search the vehicle. To do so he had the right to enter the driveway and open

the car door to determine the identification number. Such an investigation, when made on public property or property open to the public, has been held not to be a search, *United States* v. *Ware*, 457 F.2d 828 (7th Cir. 1972), *cert. den.*, 409 U.S. 888 (1972), or if a search, to be a reasonable one, even in the absence of probable cause. *United States* v. *Powers*, 439 F.2d 373 (4th Cir. 1971), *cert. den.*, 402 U.S. 1011 (1971); *Fox* v. *Commonwealth*, 213 Va. 97, 189 S.E.2d 367 (1972). *See Shirley* v. *Commonwealth*, 218 Va. 49 (1977) (this day decided). Here, while the investigation was made on private property, it was grounded on probable cause. We believe that Dwyer seized the car when he opened the door. The information reported to him that the Thunderbird was not registered in Virginia, Maryland, or the District of Columbia, merely strengthened his suspicion that the car might be stolen. But the probable cause to believe that the car was the fruit of the crime of larceny through Thims's use of a forged check, *Bateman* v. *Commonwealth*, 205 Va. 595, 139 S.E.2d 102 (1964), and that it contained the stolen stereo justified the seizure.

■ If the seizure was lawful, the ensuing search was valid, whether it be considered an inventory search or a search for stolen goods reasonably believed to be in the trunk of the car. *Schaum* v. *Commonwealth*, 215 Va. 498, 211 S.E.2d 73 (1975). The trial court found that Dwyer conducted a legitimate inventory search, and the evidence, showing that the officer followed procedures established by the Arlington County Police Department, supports this finding. *See Cabbler* v. *Commonwealth*, 212 Va. 520, 184 S.E.2d 781 (1971), *cert. den.*, 405 U.S. 1073 (1972); *Cabbler* v. *Superintendent*, 528 F.2d 1142 (4th Cir. 1975), *cert. den.*, 429 U.S. 817 (1976); *South Dakota* v. *Opperman*, 428 U.S. 364 (1976). In view of this factual finding Thims's contention that Dwyer contrived an inventory search as a pretext is without merit.

■ In the present case, no search occurred when Dwyer first saw the Thunderbird, clearly visible from the street, parked in the driveway. There was no prior valid intrusion to invoke the inadvertence requirement of the *Coolidge* "plain view" doctrine. We believe that Dwyer then had the right to make a seizure of the parked car as evidence of a crime, as the trial court ruled. In *G. M. Leasing Corp.* v. *United States*, 429 U.S. 338 (1977), it was held that warrantless seizures of automobiles parked in public streets, parking lots, and other open areas were

upheld where there was probable cause to believe that the vehicles were subject to seizure to satisfy tax assessments. Here, the vehicle was parked on private property but was fully exposed to public view, so that there was no reasonable expectation of privacy as to it. We believe that, under the facts of this case, Dwyer had the right, without a warrant, to seize and search the car, as evidence of a crime, *see Coolidge, supra,* 403 U.S. at 504 (Black, J., dissenting), 403 U.S. at 510 (White, J., dissenting).

Alternatively, we hold that the seizure and search were not unreasonable under the rationale of the plurality opinion in *Coolidge* because in addition to probable cause there were exigent circumstances arising from the inherent mobility of a motor vehicle. Under this alternative holding, the right result reached by the trial court, although for the wrong reason, will nevertheless be approved.

Thims further argues that Dwyer's actions were prohibited by Code § 19.2-59 (Repl. Vol. 1975) because the only warrantless search authorized by that statute, except for enforcement of the game laws, was search incident to arrest. The provision for warrantless search incident to arrest was added by 1975 amendment, Acts 1975, c. 495, and was eliminated by 1976 amendment, Acts 1976, c. 293. Before the "search incident" provision was included in the statute we had held that § 19.1-88, predecessor of § 19.2-59, provided the same protection as that provided by the Fourth Amendment, and that a warrantless search incident to arrest was valid. *Carter* v. *Commonwealth,* 209 Va. 317, 163 S.E.2d 589 (1968). Thus, inclusion of the "search incident" provision brought the statute in line with the *Carter* decision. *See also Kirby* v. *Commonwealth,* 209 Va. 806, 167 S.E.2d 411 (1969). Subsequent removal of the provision merely showed that the statute should be broadly worded to avoid the necessity for frequent amendments. We perceive no legislative intent that the statute in 1975 should provide any greater restrictions on warrantless searches than required under the Fourth Amendment, and we so hold.

For the reasons assigned, the judgment of the trial court will be affirmed.

*Affirmed.*

POFF, J., dissenting.

I dissent. Controlling precedents required suppression.

If the warrantless seizure of the Thunderbird automobile was constitutionally infirm, the fruits of that seizure were inadmissible as evidence.[1] While portions of the decision of the Supreme Court in *Coolidge* v. *New Hampshire,* 403 U.S. 443 (1971) were subscribed by only a plurality, Mr. Justice Harlan concurred with four Justices in "Parts I, II-D, and III of the Court's opinion and in the judgment of the Court." *Id.* at 491. With respect to those parts, the opinion has the same precedential effect as any other majority opinion. Excerpts from Part II-D are especially relevant here:

> "[A] search or seizure carried out on a suspect's premises without a warrant is *per se* unreasonable, unless the police can show that it falls within one of a carefully defined set of exceptions based on the presence of 'exigent circumstances.'" *Id.* at 474-75.

> "Since the police knew of the presence of the automobile and planned all along to seize it, there was no 'exigent circumstance' to justify their failure to obtain a warrant. The application of the basic rule of Fourth Amendment law therefore requires that the fruits of the warrantless seizure be suppressed." *Id.* at 478.

On brief, the Commonwealth concedes that the Thunderbird was found "in a protected zone of privacy (located in a driveway of private property)". The police had been told in advance that it would be found there. One of the detectives in the Criminal Investigation Division had "advised the vehicle should be

---

[1] *G. M. Leasing Corp.* v. *United States,* 429 U.S. 338 (1977), cited by the majority, where the defendant had no proprietary interest in the land on which the automobile was seized, does not validate the warrantless seizure of an automobile parked in a constitutionally protected zone. Nor does *Cook* v. *Commonwealth,* 216 Va. 71, 216 S.E.2d 48 (1975). The sole holding in *Cook* was that an officer who looked into an automobile parked on a public street and observed a seizable item (a face mask) in open view had not conducted a search "in the constitutional sense". *Id.* at 73. *Cook* did not hold that an officer who had observed a seizable item located in a constitutionally protected zone of privacy could enter that zone and seize that item without benefit of a warrant. The validity of the seizure of the face mask was not in issue. It was unnecessary, therefore, to consider the decision in *Taylor* v. *United States,* 286 U.S. 1 (1932), where the Supreme Court held that officers, who had smelled and seen what they believed was contraband liquor stored in a garage located within the curtilage of a dwelling, violated the warrant requirement of the Fourth Amendment when they entered the garage and seized the contraband.

impounded". The officer seized the car and conducted an "inventory search" before it was towed to the police property yard. Clearly, in the language of *Coolidge*, "the police knew of the presence of the automobile and planned all along to seize it", and since this was so, "there was no 'exigent circumstance' to justify their failure to obtain a warrant." From the time the police first obtained probable cause to believe that the automobile was a seizable item (the fruit of a crime) and that it was located in a constitutionally protected zone,[2] more than six hours elapsed before the seizure was made. The officer testified that, during that period, he made two trips to the Arlington police department. He had both time and opportunity to prepare and execute a constitutionally sufficient affidavit and to obtain a formal warrant.[3]

Nevertheless, the majority have found that the warrantless seizure was justified by exigent circumstances. There is "no general 'automobile exception' to the warrant requirement." *South Dakota* v. *Opperman*, 428 U.S. 364, 382 (1976) (Powell, J., concurring). The "inherent mobility" doctrine is viable only when mobility poses a realistic danger that the vehicle may be removed before a warrant can be procured. The Thunderbird had no license tags or inspection sticker. The officer was in possession of the only known set of ignition keys. The defendant and the girls who had implicated him in the crimes were in police custody. Time and distance made it impossible for the

---

[2]I disagree with the conclusion reached by the majority that the officer did not have probable cause to seize the car until he sighted it in the driveway. Probable cause need not await visual verification at the scene of the seizure. Two informants had furnished detailed information concerning the burglary, criminal agency, and the location of the fruits of the crime. While one informant had weakened her personal credibility by giving a false name, the information she furnished was corroborated by that furnished by the *other* informant and reinforced by the physical evidence inspected by the officer (the victim's checks, the receipt for the Thunderbird, and the ignition keys). *See Huff* v. *Commonwealth*, 213 Va. 710, 714-15, 194 S.E.2d 690, 694 (1973). The fact that the informants were "admittedly infatuated with Thims" hardly weakens the reliability of the information they gave *against* him. And the fact that the statements made by the sister of the victim of the burglary were declarations against her penal interest tends to strengthen the reliability of the information she volunteered. *United States* v. *Harris*, 403 U.S. 573 (1971); *Manley* v. *Commonwealth*, 211 Va. 146, 150-51, 176 S.E.2d 309, 313 (1970), *cert. denied*, 403 U.S. 936 (1971).

[3]The argument that the controlling test required by the Fourth Amendment is whether the search or seizure is reasonable and not whether it is reasonable to procure a warrant has been specifically rejected. *Chimel* v. *California*, 395 U.S. 752 (1969); *accord, United States* v. *United States District Court*, 407 U.S. 297 (1972).

defendant to apply for bail, post bond, acquire transportation, and win a race with the officer to the Thunderbird. The former owner could not have moved the car without committing grand larceny. There was no evidence whatever that the defendant's mother or any other member of his family knew that the car had been purchased with a forged check or that the police had any reason to seize it, search it, or seize its contents. Thus, the danger that the car might be moved or its contents removed from the locked trunk was hardly realistic and certainly not an exigent circumstance.

In hindsight, the majority have discovered "exigencies" which the officer who made the seizure did not see.[4] At the first of two hearings on the motion to suppress, the officer justified the warrantless seizure on the ground "that the vehicle could possibly be stolen and contained stolen merchandise". At the second hearing, he made no reference to the possibility that the car might have been stolen. Rather, he felt that a warrant was not required because the car was "purchased with stolen, forged checks" and, since the car was "fruits of the crime itself", it should be "taken into custody as evidence." In neither hearing did the officer express any concern that the car might be moved or its contents spirited away by the defendant, the former owner, the defendant's mother, or some faceless friend. In making the warrantless seizure, he was motivated, not by circumstances he considered exigent, but by probable cause to believe that the car and what he expected to find in its trunk were seizable items. But if probable cause as determined by the officer were sufficient, then the warrant clause of the Fourth Amendment which requires "that the deliberate, impartial judgment of a judicial officer ... be interposed between the citizen and the police", *Wong Sun* v. *United States*, 371 U.S. 471, 481-82 (1963) would be meaningless. "A related purpose of the warrant requirement is to prevent hindsight from affecting the evaluation of the reasonableness of a search." *South Dakota* v. *Opperman, supra,* 428 U.S. at 383 (Powell, J., concurring).

An "inventory search" of an automobile conducted in accord with prescribed police regulations is constitutionally permissible

---

[4]Moreover, what the majority have lately discovered, the trial judge expressly decided did not exist. "Nor do you have here any exigent circumstances," he said, "nor would it appear to the Court that the mobility doctrine that is applied to the search of automobiles would apply. . . ."

when the automobile is "in lawful police custody where the process is aimed at securing or protecting the car and its contents." *Id.* at 373. The Thunderbird was not in lawful police custody, and the real purpose of the officer's entry into the locked trunk was, not to protect the car and its contents, but to discover and seize the stolen radio which he had probable cause to believe would be found there.

The seizure of the car, the search of the car, and the seizure of the radio, all without benefit of warrant and wholly unjustified by any exigent circumstance, violated the very essence of the Fourth Amendment guarantee. So long as the exclusionary rule remains applicable to the states, *Mapp* v. *Ohio*, 367 U.S. 643 (1961), *Hawley* v. *Commonwealth*, 206 Va. 479, 481, 144 S.E.2d 314, 316 (1965), *cert. denied*, 383 U.S. 910 (1966), we should apply it.