### Richmond

NORMAN B. DERR

v.

COMMONWEALTH OF VIRGINIA

No. 0750-86-2

Decided May 3, 1988

216

COUNSEL

Benjamin H. Woodbridge, Jr. (M. R. Reamy; Woodbridge & Reamy, on brief), for appellant.

Thomas C. Daniel, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**BENTON, J.**—Norman B. Derr was acquitted of attempted rape but convicted by a jury of robbery and sentenced to ten years imprisonment. On appeal, he contends that his fourth amendment rights were violated by the admission into evidence of items seized from his motor vehicle. We conclude that the admission of some of the evidence of which he complains was violative of his fourth

amendment rights; therefore, we reverse the conviction and remand for a new trial.

At the hearing on the motion to suppress, Deputy Hatch, of the Spotsylvania County Sheriff's Department, testified that at 7:40 p.m. on October 31, 1985, he observed an unoccupied 1973 Cadillac parked in front of a partially completed house on a cul-de-sac. The cul-de-sac, which was located in a newly developed subdivision in Spotsylvania County, had not yet been designated as a public road and was not then marked by street signs. Hatch stated that no signs prohibiting trespassing had been posted in the area and that he observed no activity in the area surrounding the vehicle. The vehicle displayed current registration and inspection stickers and did not appear to be in violation of the motor vehicle laws.

Hatch attempted to obtain a check of the vehicle's license plates through the Division of Motor Vehicles. Unable to get a response from his dispatcher, Hatch called his supervisor, Sergeant Smith, and requested that he join him at the scene. Before Smith arrived, Hatch examined the vehicle's interior using his flashlight. Hatch testified that he was able to discern "the butt of what appeared to be a pistol protruding from under the driver's . . . seat," a wallet and a nylon stocking protruding from under the fold-down divider between the driver's and front passenger's seats, and an electric drill lying on the front seat.

Hatch entered the vehicle through the unlocked door on the driver's side and found in the glove compartment the vehicle's registration, a tape recorder, and a small paring knife. He looked inside the wallet and found a union card and a Virginia operator's license, both issued to Derr, and a five dollar bill. Upon further examination, he determined that the pistol was a pellet gun. He noticed for the first time that the nylon stocking, which he had initially seen from the exterior, was approximately ten inches in length and apparently cut from a pantyhose. Hatch also saw two headcovers fashioned from handkerchiefs and noticed keys in the ignition.

When his supervisor arrived, Hatch showed him what he found in the vehicle and then replaced all the items where he found them. Hatch, his supervisor, and Deputy Frazier began a search of the area; however, Hatch was called away on an unrelated mat-

ter but subsequently returned to the Cadillac at about 8:20 p.m. When Hatch returned, the three officers left the vehicle unattended and again searched for suspicious activity in the nearby area. At approximately 8:43 p.m., while Hatch was still in the vicinity, he heard a radio alert pertaining to a robbery occurring at a beauty shop located on Route 3, approximately 75-100 yards from where the vehicle was discovered. Hatch proceeded to the shop where he met with its owner, Teresa Manfre, and Detective Samuels. No surveillance was maintained on the vehicle during that time. Although Hatch did not return to the location of the vehicle, he advised other officers by radio "to be on the lookout for that vehicle and stop [it] if they could find it."

Hatch obtained a search warrant after the vehicle was stopped and Derr was in custody. The affidavit which he executed in support of the issuance of the search warrant states in pertinent part:

Approximately 5 minutes prior to the offense your affiant observed the described vehicle parked approximately 100 (One Hundred) yards from the scene of the crime. The doors were unlocked and the keys were in the ignition. Upon examination of the inside of the auto to find a registration card the affiant located a wallet containing, an operators license issued to Norman Derr of Tappahannock Va. and a five dollar bill. Also in the front seat were a homemade mask from a pair of nylon pantyhose. Two head coverings fashioned from hankerchiefs [sic] and an electric drill. The vehicle was parked in front of a home under construction and the affiant felt a further investigation was in order due to thefts and a previous rape in the immediate area. A further examination of the interior of the auto disclosed a pellet pistol under the front seat.

Based on your affiant's experience as a law enforcement officer it was suspected criminal activity was occurring in the area and would be linked to this auto. A license check of the owner disclosed he matched the physical description of a rape suspect at Kinder Kare Nursery which was located near where the auto was located.

* * *

. . . later the suspect vehicle was located near Fredericks-burg on Lafayette Blvd. From the outside of the vehicle the affiant could observe a roll of U.S. currency stuffed between the seats in the front seat also a quantity of loose coins on the floor board. These items were not in the car when the affiant first investigated the suspicious vehicle.

The judge overruled the motion to suppress all items seized pursuant to the warrant and Hatch's statements pertaining to his observations of the vehicle.

In this appeal from the robbery conviction, Derr contends that Hatch's initial entry into the vehicle was violative of the fourth amendment and that the subsequent search conducted pursuant to a warrant issued upon information obtained through the initial intrusion was likewise invalid. He, thus, asserts that it was error for the trial court to admit into evidence the items seized during the search of his vehicle. Although Hatch testified that the vehicle was not on a public street, Derr has not raised any issues concerning the nature of the site and we do not decide whether the location of the vehicle affects the propriety of the search. The precise issue raised in this case requires us to determine whether Hatch had probable cause to conduct the warrantless search.

■ Generally, searches conducted without a warrant are *per se* unreasonable and, therefore, unlawful under the fourth amendment. *Katz v. United States*, 389 U.S. 347, 357 (1967); *Vass v. Commonwealth*, 214 Va. 740, 743, 204 S.E.2d 280, 283 (1974). The general rule is subject to defined exceptions. Under the "automobile exception" to the fourth amendment's warrant requirement, a vehicle may be searched without a warrant if there is probable cause to believe that the vehicle contains evidence of crime. *United States v. Ross*, 456 U.S. 798, 806-08 (1982); *see also Vass v. Commonwealth*, 214 Va. at 743-44, 204 S.E.2d at 283.

■ In determining whether probable cause to search exists, no hard and fast rule exists which may be rigidly applied to yield a certain result in each case. "Rather, probable cause exists when the facts and circumstances within the officer's knowledge, and of which he has reasonably trustworthy information, alone are suffi-

cient to warrant a person of reasonable caution to believe that an offense has been or is being committed." *Taylor v. Commonwealth*, 222 Va. 816, 820, 284 S.E.2d 833, 836 (1981), *cert. denied*, 456 U.S. 906 (1982). Although we are required to "test what the totality of circumstances meant to police officers trained in analyzing the observed conduct for purposes of crime control," *Hollis v. Commonwealth*, 216 Va. 874, 877, 223 S.E.2d 887, 889 (1976), we must also consider that "the probable-cause determination must be based on objective facts that could justify the issuance of a warrant by a magistrate." *Ross*, 456 U.S. at 808.

Hatch observed the vehicle, at night, parked on a cul-de-sac in an area in which there were only uncompleted, unoccupied houses. Although it was Halloween night and there was a great deal of minor nuisance activity, Hatch knew of no criminal activity that evening which he associated with the immediate area. Although he testified at the suppression hearing that he was aware of "a number of larcenies and burglaries, at least one sexual assault in the area, all within . . . a couple-months period," he did not articulate a nexus between that awareness and his reason for entering the vehicle.

■ Upon illuminating the interior of the vehicle with his flashlight from the exterior, an action which implicates no fourth amendment concerns, *see, e.g., United States v. Dunn*, 480 U.S. 294, 305 (1987); *Texas v. Brown*, 460 U.S. 730, 739-40 (1983), Hatch testified that he observed a portion of a nylon hose and a wallet protruding from under a movable divider on the front seat, an electric drill lying on the front seat, and "the butt of what appeared to be a pistol protruding from under the driver's side of the front seat." Hatch testified that the location of the vehicle aroused his suspicion; he did not testify that the items, individually or collectively, which he observed while looking into the vehicle, indicated to him that a crime had been or was being committed. Nor did he testify that he believed that the vehicle or the items which he saw in plain view were instrumentalities of a crime. This lack of belief that a crime had been or was being committed is further evidenced by the fact that, after the vehicle was searched, all the items which were inspected were replaced and the vehicle was left unobserved and unattended for a significant period of time.

Moreover, Hatch's affidavit strongly suggests that it was not suspicion of criminal activity that caused him to enter the vehicle. But, rather, because of his suspicion concerning "the vehicle," he entered it to obtain registration information after he was unable to obtain a license check through his dispatcher. Although at the suppression hearing Hatch testified that he saw a partially disclosed gun prior to entering the car, Hatch's affidavit, executed on the night of the search, averred that he entered the car and discovered several items "[u]pon examination of the inside . . . *to find a registration card.*" Significantly, the affidavit contains no reference to any initial observations that Hatch made while outside the vehicle. The affidavit described "a homemade mask" and "two head coverings," both of which configurations Hatch testified he was only able to discern after entering the vehicle. Additionally, the affidavit states that "[a] *further examination* of the interior of the auto *disclosed* a pellet pistol."

Hatch did not articulate any facts upon which he could have concluded prior to his entry of the vehicle that the vehicle itself was evidence of or an instrumentality of a crime. There is also no basis in this record from which we can conclude that the objective facts known to Hatch when he entered the vehicle supplied probable cause for him to conclude that a crime had been or was about to be committed and that a further search of the car would have revealed contraband or evidence of a crime. *Cf. United States v. Rickus*, 737 F.2d 360, 366-67 (3d Cir. 1984). The evidence merely establishes that Hatch believed that there "was suspected criminal activity . . . occurring in the area and would be linked to this auto."

█ Admittedly, Hatch was suspicious because of the location of the vehicle. However, "suspicion, or even strong reason to suspect" is not an adequate substitute for probable cause to justify the entry and search. *Henry v. United States*, 361 U.S. 98, 101 (1959); *see also United States v. Rickus*, 737 F.2d at 366. It was only after the vehicle had been searched that Hatch learned from "a license check of the owner" that Derr "matched the physical description of a rape suspect." We, therefore, conclude that Hatch's entry into the unlocked vehicle and the ensuing examination of its contents violated Derr's fourth amendment rights.

Because Hatch's initial entry into the vehicle was a prohibited warrantless search, evidence and testimony relating to evidence

discovered as a result of that entry must be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 484 (1963). We must distinguish, however, between (a) evidence and testimony concerning items which were observed after the entry and (b) testimony concerning items which were observed in plain view before the entry. "The use of the flashlight did not preclude application of the 'plain view' doctrine", *Effler v. Rose*, 535 F.2d 980, 981 (6th Cir.), *cert. denied*, 429 U.S. 982 (1976); therefore, any items observed by Hatch when he viewed the interior of the automobile with his flashlight were not discovered as a result of a fourth amendment violation. Consequently, Hatch's testimony concerning his observations prior to entering the vehicle is admissible.

A review of the trial testimony leads to the conclusion, however, that a remand is required for a determination of factual issues concerning events which occurred subsequent to the report of the robbery. The testimony establishes that Hatch initiated the alert to stop the vehicle after his interview with Teresa Manfre, the owner of the beauty shop. Manfre testified at trial that she worked at the shop until about 8:30 on the evening of October 31, 1985. While she was counting the proceeds from the day's business, she noticed something move through a beam of light outside the shop. She hastily gathered the money and left within five minutes. As she was about to lock the door, a man with a knife came up from behind her, put something over her mouth and told her not to scream. He instructed her to unlock the door, followed her back into the shop and then instructed her to lie down and take off her clothes. As the two struggled, Manfre told the assailant that she had already called her husband and that he would be looking for her. The intruder took the store's receipts and separated the checks from the cash. After he left taking the cash, Manfre called the police. She could only identify her assailant by estimating his height and weight and by stating that he was wearing a stocking mask. Although Manfre could not tell exactly how much cash was taken, she estimated the amount to be $150, about $35 of which was in one-dollar bills.

At 9:14 p.m. Hatch learned from police radio transmissions that the vehicle had been stopped. As Hatch arrived at the location of the stop, Derr was being taken away in a police vehicle. No one was in or around the vehicle. The evidence does not reflect whether the officers who arrested Derr searched the vehicle at the

time of the arrest. Hatch again shined his flashlight into the car and noticed that the wallet and the protruding nylon stocking were not visible. After observing a roll of money lodged between the seats, he entered the vehicle and removed thirty-nine one-dollar bills. The vehicle was towed to a magistrate's office where a warrant was issued authorizing a search of the vehicle and Derr's person. Upon searching the glove compartment, Hatch found all the items that he previously had seen in the glove compartment. He also discovered a knife with a black handle which he had not seen when he previously examined the interior of the vehicle. The search of Derr's wallet disclosed $87 in cash, in addition to the five dollar bill which Hatch had seen earlier that evening. Hatch also seized the pellet gun.

Officer Howard Smith testified that his trained dog tracked a scent from the front door of the beauty shop, across the parking lot, through a grassy area, and to the cul-de-sac where Hatch initially saw the Cadillac. The dog stopped tracking in the middle of the cul-de-sac, near the place where the Cadillac had been parked. The evidence does not reflect when, with reference to the other events, the tracking occurred.

■ Whether Hatch's knowledge of the vehicle, which apparently led to its apprehension after the robbery, had an independent basis in information obtained by Hatch prior to the entry and search of the vehicle is a question of fact. We remand that issue to the trial court for a factual determination of the circumstances giving rise to the apprehension of the vehicle.

> Evidence obtained as a direct result of an unconstitutional search or seizure is plainly subject to exclusion. The question to be resolved when it is claimed that evidence subsequently obtained is "tainted" or is "fruit" of a prior illegality is whether the challenged evidence was " 'come at by exploitation of [the initial] illegality or instead by means *sufficiently distinguishable* to be purged of the primary taint.' "

*Segura v. United States*, 468 U.S. 796, 804-05 (1984)(citation omitted)(quoting *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)(emphasis in original)). The trial court must determine whether to suppress the seizure of the roll of money stuffed between the seats, but in plain view, when the vehicle was stopped

subsequent to the robbery, and whether to suppress testimony concerning evidence observed in the vehicle at that time. Because the warrant to search the vehicle after the stop was issued upon an affidavit containing facts discovered during the initial unlawful entry, we conclude that any evidence seized and facts learned as a result of the execution of that warrant must be suppressed.

Accordingly, the conviction is reversed and the case is remanded for proceedings consistent with this opinion and a new trial if the Commonwealth be so advised.

*Reversed and remanded.*

Koontz, C.J., and Baker, J., concurred.