## CIRCUIT COURT OF ALBEMARLE COUNTY

Commonwealth of Virginia

    v.

George R. Swift, Jr.

January 20, 1998

BY JUDGE PAUL M. PEATROSS, JR.

This case comes before the Court on Defendant's Motion to Suppress filed pursuant to § 19.2-60 Code of Virginia, filed on October 8, 1997. Defendant asked the Court to suppress all evidence obtained from a warrantless search of 1027 Hacktown Road in Charlottesville, Virginia, by officers of the JADE Task Force.

### Factual Findings of the Court

In response to information provided by an ABC agent stating that marijuana was being grown on the premises of 1027 Hacktown Road, Detectives Baber, Barbour, and Bibb of the JADE Task Force proceeded to the residence to question the occupants about the report. On arriving at the address, the detectives knocked on the front door of the residence but received no answer. Detective Barbour then proceeded to a side door of the house where he received no response from knocks on this door. While knocking on the door, Detective Barbour noticed a boat several feet beyond the end of the Defendant's driveway. Detective Barbour approached the boat and examined it because of a personal interest in fishing. While examining the boat, he noticed a black pot sitting in the backyard of the Defendant's house which he suspected, based on his training, contained a marijuana plant. Detective Barbour walked over to the plant, examined it, and found it to be marijuana.

Detectives Barbour and Bibb then searched the remainder of the yard and found additional plants behind a dog pen in the back of the yard next to

the woods. In all, sixteen plants were recovered from the back yard of Defendant's residence.

As the detectives were about to leave, a van pulled up in the driveway and the Defendant stepped out. Detective Baber met him and identified himself as a police officer and showed him his badge. Baber told him he was there to investigate the allegation of marijuana being grown on the property and told Mr. Swift he was not under arrest and was free to leave at any time. Mr. Baber asked Mr. Swift if there were more drugs in the house, and Mr. Swift replied that there may be. Mr. Baber asked Mr. Swift if he minded the police officers coming inside to look around, and Mr. Swift indicated he did not mind.

On entering the house, the detectives observed drug paraphernalia in plain view. During the discussion, Defendant told police about seventeen additional marijuana plants in the front yard and several bags of marijuana in the residence. When questioned about the bags of marijuana and the marijuana plants, the Defendant stated that he sometimes sold the drugs to friends and relatives. The Defendant was then placed under arrest for narcotics violations.

## Questions Presented

(1) In the Commonwealth of Virginia, did the detectives lawfully observe the marijuana plants in the Defendant's back yard when they viewed the plants from beyond the edge of the driveway when they entered the curtilage for the purpose of conducting a "knock and talk" investigation?

(2) If the detectives were not lawfully on the property, was the consensual search valid?

## Discussion of Authority

### I. "Knock and Talk"

The position of the United States Supreme Court on the issue of warrantless searches has vacillated. The Supreme Court has at times held standard exceptions to warrantless searches and at times held that the reasonableness of the search can be determined only by examining the individual facts of each case and balancing the government interest in the search against the invasion of privacy. *Pennsylvania v. Mimms*, 434 U.S. 106 (1977).

It should be noted that the Fourth Amendment only prohibits unreasonable searches and seizures; therefore, if a warrantless search and seizure is reasonable, then it is not unlawful. *Elkins v. United States*, 364 U.S. 206 (1960); *One 1963 Chevrolet Pickup Truck v. Commonwealth*, 208 Va. 206 (1968). However, all such warrantless entries are presumed unreasonable, and it is the burden of the Commonwealth to overcome the heavy burden against admissibility and justify the warrantless entry. *Welsh v. Wisconsin*, 466 U.S. 740 (1984); *Fore v. Commonwealth*, 220 Va. 1007 (1980). In determining whether evidence from a warrantless search should be excluded, the individual circumstances of the case must be examined. *Reynolds v. Commonwealth*, 9 Va. App. 430 (1990). In reviewing motions to suppress evidence obtained without a warrant, the trial court's determination is reviewed in the light most favorable to the party prevailing below and can be overturned only upon clear and manifest error. *Commonwealth v. Grimstead*, 12 Va. App. 1066 (1980).

Virginia Code § 19.2-59 provides that no police officer may search any "place, thing or person" unless under the authority of a search warrant issued by the proper authority. However, in spite of this language, the Virginia Supreme Court has recognized the same exceptions to warrantless searches that the United States Supreme Court has recognized. *Thims v. Commonwealth*, 218 Va. 85 (1977).

In general, the exceptions to the warrant requirement can be divided into those based on the need for immediate action and those based on a lessened expectation of privacy. Ronald J. Bacigal, *Virginia Criminal Procedure*, § 4.17 at 67 (3rd ed. 1994). Plain view is a recognized exception to the warrant requirement in Virginia. *Lugar v. Commonwealth*, 214 Va. 609 (1974). However, the plain view justifies only warrantless seizures, not warrantless searches and applies only when there was no search for the item seized. *Texas v. Brown*, 460 U.S. 730 (1983). There are two requirements for the plain view doctrine: (1) the police are lawfully in a position to view the item, and (2) it is immediately apparent the item in plain view is subject to seizure. *Coolidge v. New Hampshire*, 403 U.S. 443 (1971). The first requirement mandates that the police must justify their presence in the area where they observed the item seized. If the item was on private property, the police must have a warrant or justify their search via one of the recognized exceptions to the warrant requirement. *Id.* at 612. Therefore, the police must have an independent reason for entering the private property in addition to the plain view exception. *Id.* at 611.

The curtilage has been defined as the home and the area around the home to which the activity of home life extends, and both areas are entitled

to Fourth Amendment protection. *Oliver v. United States*, 466 U.S. 170 (1984); *Wellford v. Commonwealth*, 227 Va. 297 (1984). In determining what the curtilage includes, *United States v. Dunn* commands us to examine four factors: (1) the proximity of the area to the home, (2) whether the area was enclosed or open, (3) the nature and uses to which the area is put, and (4) the steps taken to secure the area from casual observations. *United States v. Dunn*, 480 U.S. 294 (1987). However, open fields are not subject to the protection of the Fourth Amendment. *Oliver*, 466 U.S. at 181. However, what a person knowingly exposes to public view in the home or curtilage is not subject to Fourth Amendment protection, but what a person seeks to preserve as private even in an area accessible to the public may be protected under the Fourth Amendment. *Katz v. United States*, 389 U.S. 347 (1967).

Applying these principles to the case at bar, the marijuana plants were detected only after the detectives stepped around the side of the Defendant's home and off the end of the driveway into the Defendant's backyard. Clearly, this is an area where the activity of the home extended, and the above analysis suggests that the area is defined as the curtilage, even though steps were not taken to enclose the area or protect it from view. Therefore, the detective was inside the curtilage when he made the observation. More importantly, the authority to visit the residence to conduct a "knock and talk" investigation did not give the detectives the authority to stray into the curtilage and make even casual observations of areas where the Defendant maintained reasonable expectations of privacy. Therefore, the search and seizure of marijuana plants in the Defendant's back yard was unreasonable. This is not to say that any such observation of the marijuana plants in the Defendant's curtilage would be a constitutional violation. For example, if the detectives were walking up to the front door and noticed the marijuana plants in the bushes in front of the house, the Defendant would have given up his expectation of privacy and forfeited Fourth Amendment protection. However, such was not the situation in this case, and the mandate of the United States Supreme Court requires that the reasonableness of each search and seizure be evaluated on the facts of each case.

## II. *Validity of Consensual Search*

As noted in *Deer v. Commonwealth*, 17 Va. App. 730 (1994):

The question of whether a particular "consent to a search was in fact voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). Police need not warn the suspect that he has a right to refuse the search, but the suspect's knowledge of his right to refuse falls within the totality of the circumstances the Court must consider.

*Id.* at 735.

The Court of Appeals further noted: "However, where police use coercion under the color of lawful authority, the consent will most likely be invalid." *Id.* at 735.

The burden is on the Commonwealth to show that the consent to search was "freely and voluntarily given." *Lowe v. Commonwealth*, 218 Va. 670 (1977).

Further, a Court must look to the totality of the surrounding circumstances and consider certain factors. No single factor is controlling, and the officers' failure to inform the Defendant of his Fourth Amendment protections or his right to refuse consent does not render the consent involuntary. *Limonja v. Commonwealth*, 7 Va. App. 416 (1988); *Walls v. Commonwealth*, 2 Va. App. 639 (1986).

In *Reynolds v. Commonwealth*, 9 Va. App. 430 (1990), the Court of Appeals noted that in determining whether the exclusionary rule should be applied at the trial level to exclude evidence discovered as a result of warrantless crossing of the threshold of one's home, the Commonwealth has a heavy burden to justify a warrantless entry, as all such entries are presumed to be unreasonable. *Id.* at 435-436.

In applying the above law to the facts of this case, the question is whether or not the consent was the result of duress or coercion, express or implied. Detective Baber, after identifying himself as a police officer, told Mr. Swift why he was present, i.e., investigating an alleged narcotics violation, and told him that he had found marijuana by asking Mr. Swift if there was more marijuana in the residence. This Court has found that the discovery of the marijuana in the yard was an unreasonable seizure.

Mr. Swift, being confronted with the fact that the police had discovered marijuana in the yard, was then asked if more marijuana was in the house, at which time he said there may be. Thereafter, Detective Baber asked Mr. Swift if he minded if they went into the residence to look around, at which time Mr. Swift gave his consent to do so.

Considering the fact that the police had told Mr. Swift they had discovered marijuana outside and the fact that the police had learned from Mr. Swift that there may be more marijuana inside, coupled with the lack of telling Mr. Swift of his Fourth Amendments rights and of his right to refuse, which the police officer was not required to do, the Court finds in looking at the totality of the circumstances that the consent was not free and voluntary. The Court finds there was implied coercion for Mr. Swift to consent after the police told him of the illegally seized marijuana and learned from Mr. Swift that more marijuana may be in the house.

Accordingly, the Motion to Suppress the evidence is granted.