# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Commonwealth of Virginia

v.

Joseph Randolph Deane

October 25, 1990

Case No. 90-246

## By JUDGE JAY T. SWETT

Defendant has moved to suppress certain evidence that caused his arrest for possession of cocaine. A suppression hearing was held on October 1, 1990, during which the following testimony was presented.

Late on the evening of April 28, 1990, Mr. Townsend, an off-duty Charlottesville police officer, was at his home at the corner of Ninth and Anderson Streets in the City of Charlottesville. While sitting on his porch, he saw three women approach the corner approximately twenty-five feet away. A red car pulled up. The officer saw a passenger lean out and heard the passenger ask the women, "Are you looking?" One of the women responded, "No." The passenger then said, "We got the stuff," and one of the girls responded, "We don't smoke that stuff." The passenger then said, "It ain't soap." The vehicle then departed. The officer testified that he was aware of and had experience involving drug activity in his residential area. He testified he was familiar with the language used in drug transactions. Based on his experience, he believed that he had witnessed an attempt to sell drugs by the passenger in the vehicle.

After the car drove off, the officer telephoned the police dispatcher to request assistance. After making the telephone call, the officer went back outside. In

a few minutes, Officer Palmateer arrived in a police van. Officers Palmateer and Townsend drove around the area and spotted the red car. They radioed for additional assistance and followed the red car until it pulled into a parking lot. Mr. Townsend testified that as they approached the car in the parking lot, he followed the "felony" procedure which involved approaching the car with guns drawn. He testified that his concern was that the occupants possessed weapons. On direction from the police officers, the two occupants exited the car. The driver was Joseph R. Deane, the defendant. Mr. Palmateer started to search the vehicle. At this time, the defendant asked whether the officer had a warrant to search his vehicle. The officer responded that he did not and explained to the defendant what the off-duty officer had seen and heard and that a warrant was unnecessary. In the search, the officer found a brown paper bag which contained a pipe with a screen. The officer believed that the bowl of the pipe contained cocaine residue. The officer also found a zip-lock bag under the passenger seat which contained what the officer believed to be crack cocaine. At that point, the defendant and the passenger were placed under arrest.

Mr. Palmateer testified that he conducted the warrantless search of the defendant's vehicle based upon the information given to him by Officer Townsend. Officer Palmateer testified he believed there was probable cause based on the exchange heard by Townsend and that this justified the warrantless search of the vehicle. Officer Palmateer confirmed that the arrest of Mr. Deane occurred after and as a result of the items found during the search.

Mr. Deane testified that he saw the women at the street corner, but he did not hear his passenger say anything to them. He testified that when they later pulled into the parking lot, he saw four to six police officers in two cars and two vans around his car. He testified he believed that two officers had their guns drawn and recalled specifically that one pointed his gun at the passenger. He could not recall if he had a gun pointed at him. He testified that he did not know why he was stopped. Once he got out of his vehicle, no one asked him if his car could be searched. He testified that he was escorted to the rear of his car and was told to place

his hands on the trunk. At that time, he saw a police officer searching his vehicle. He asked the officer if he had a search warrant and was told by the officer that he did not need one nor did he need the defendant's permission to search the vehicle. The defendant testified that he was not placed under arrest until after the vehicle search was completed. He testified that prior to his arrest, he did not feel that he could have walked away from the officers.

At the conclusion of the evidence, the Commonwealth conceded that, given the testimony of the officer conducting the search, the warrantless search could be justified only based upon a finding of sufficient probable cause and that this was not a stop and search justified under *Terry v. Ohio*, 392 U.S. 1 (1968). Further, the evidence was that the arrest of the defendant was based upon the items found in the warrantless search. Therefore, the search cannot be justified as a search incident to a lawful arrest. *Chimel v. California*, 395 U.S. 752 (1969); *Hart v. Commonwealth*, 221 Va. 283 (1980). The Commonwealth argues that the warrantless search was justified because there existed probable cause to believe that there were seizable items in the automobile and that it was not practicable to secure a warrant because the vehicle would have been moved.

It is important to note at the outset that the so-called "automobile exception" to the Fourth Amendment's warrant requirement is separate from the issue of probable cause. The automobile exception that has evolved is an exception to the warrant requirement based upon exigent circumstances principally because of the mobility of an automobile and the impracticality of obtaining a search warrant from a magistrate. *Chambers v. Maroney*, 399 U.S. 42 (1970). However, probable cause to believe that the vehicle contains evidence of a crime is still essential before the warrantless search is deemed lawful. *United States v. Ross*, 456 U.S. 798, 806-08 (1982).

As noted in *Derr v. Commonwealth*, 6 Va. App. 215, 219 (1988), there is no hard and fast rule to apply in determining whether probable cause to search exists in a given situation. "Rather, probable cause exists when the facts and circumstances within the officer's knowledge, and of which he has reasonably trustworthy information,

alone are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed." *Taylor v. Commonwealth*, 222 Va. 816, 820 (1981). In evaluating all of the facts and circumstances, the test is what the circumstances "meant to police officers trained in analyzing the observed conduct for purposes of crime control." *Hollis v. Commonwealth*, 216 Va. 874, 877 (1976).

The officer who conducted the warrantless search of the vehicle did not personally observe any of the facts and circumstances that gave rise to what he believed to be sufficient probable cause to search the vehicle. His decision to search was based exclusively on what he was told by the off-duty officer who overheard the verbal exchange and observed the participants at the corner of Ninth and Anderson Streets. The evidence was that this police officer had lived in the area for a number of years. He had seen an increasing number of drug transactions occur in that area. He had personally been involved in several arrests for drug activity in that area. He described it as a high-crime and high-drug area.

His experience also enabled him to become familiar with certain terminology used by drug traffickers. He testified that "are you looking" is a term used by a drug seller to approach potential buyers and that it meant "do you want to buy cocaine?" He testified that the normal response by a buyer who is interested in purchasing drugs is "what do you have?" The officer testified that the seller might then respond with a statement to the effect that "it ain't soap," soap referring to a product sold to imitate cocaine. The officer testified that shortly after he observed the above-described exchange, he saw the red car stop and the occupants talk with three other groups of people before the other officer arrived.

Mr. Deane argues that at best, the information observed by Officer Townsend would create a reasonable suspicion that would warrant a stop under *Terry v. Ohio, supra.* Defendant principally relies on the case of *DePriest v. Commonwealth*, 4 Va. App. 577 (1987). Because the facts in *DePriest, supra,* are similar to those here, the facts in *DePriest* should be reviewed in some detail.

DePriest and a man named Toney were observed by a police officer for a period of approximately four hours.

During that time, the officer saw Toney receive money from a female after which Toney and DePriest left for several minutes. Upon their return, Toney handed something to the female. The item was not identified. A similar transaction occurred approximately one hour later. A subsequent third transaction observed by the officer involved a known heroin user. In that transaction, the officer observed hand contact between Toney and the known heroin user. The officer also observed the user approach DePriest and hand him money which DePriest then counted before placing it in his pocket. Over the next two hours, the officer observed Toney and DePriest in two or three other similar situations. The officer never saw the exchange of illegal drugs.

When DePriest and Toney were about to leave, the officer radioed for others to stop and detain them. The two men were stopped. A patdown search of both produced nothing. Several minutes later, the officer who had observed Toney and DePriest arrived. He conducted a more thorough search of Toney and found what he believed to be heroin. Toney and DePriest were then placed under arrest and charged with possession of heroin with intent to distribute. The officer acknowledged that had he not found the white powder on Toney, he would not have arrested DePriest. Following DePriest's arrest, a more thorough search of him was conducted at the police station, and six small plastic bags of heroin were found.

On appeal, DePriest argued that his arrest and the subsequent search were unlawful, arguing that he and Toney should not have been detained to the extent that they were since the officer's observations would have justified only a brief detention under *Terry v. Ohio, supra.* DePriest also argued that since his arrest was based solely on the drugs found on Toney and since the extensive search of Toney was unlawful, DePriest should not have been arrested nor should he have been detained after the patdown search.

Although the Court of Appeals in *DePriest* dealt at length with the observations of the officer and whether or not such observations would constitute probable cause for an arrest versus reasonable suspicion for a *Terry* stop, the case was decided on two other issues, neither of which are present here. The first was whether DePriest's

continued detention constituted an arrest after the patdown search did not produce any weapons. DePriest argued that he should have been released before the more extensive search of Toney disclosed heroin. The Court of Appeals found that although the observations of the police officer would not have been sufficient to warrant the arrest of DePriest, the observations were sufficient to justify the detention of DePriest until the officer could arrive and investigate his reasonable suspicion. The Court of Appeals went on to find that DePriest's detention did not mature into an arrest as they waited for the officer who had observed the two engaged in the suspicious activity.

The second issue in *DePriest* was one of standing. The Court found that the arrest of DePriest was lawful based upon the discovery of the heroin on Toney and that DePriest could not challenge his arrest based upon the adequacy of probable cause to search Toney. Citing *United States v. Givens*, 733 F.2d 339 (4th Cir. 1984), and *Rakas v. Illinois*, 439 U.S. 128 (1978), the Court of Appeals found that DePriest lacked standing to challenge the search of Toney.

Thus, *DePriest* is different from this case in two important aspects. First, this case involves whether there was probable cause to conduct a warrantless search of an automobile. In *DePriest*, the Court of Appeals discussed the observations of the officer and whether there was probable cause to arrest DePriest and Toney. While the evidence to substantiate a finding of probable cause for a search and of probable cause for an arrest may overlap, the inquiries are still somewhat different. To determine probable cause to justify a search, the inquiry is whether there is a reasonable belief that seizable items are located in the thing or area to be searched. *Brenigar v. United States*, 338 U.S. 160 (1949). On the other hand, probable cause to justify an arrest is whether the circumstances warrant a reasonable person to believe that a crime has been or is about to be committed.

Applying those principles to this case, the issue is whether the information given by Officer Townsend was sufficient for Officer Palmateer to conduct a warrantless search of the vehicle. Here, Officer Townsend was apparently unnoticed during the verbal exchange between the occupants of the red car and the three women on the corner of Ninth

and Anderson Streets. Based upon his experience in drug activity, the statement from the passenger of the red car was the equivalent of "do you want to buy some cocaine?" This was the statement "are you looking?" The words "we got the stuff" and "it ain't no soap" were equivalent to the words "we have some cocaine and it's the real stuff." In this court's view, this transaction alone was sufficient to justify a reasonably experienced police officer to believe that the occupants of the red vehicle had cocaine available for sale in the vehicle. When this is added to the fact that the officer was aware that the area was one of high drug activity, it supports an affirmation that there was sufficient probable cause to stop the vehicle and conduct a search for drugs.

Having found that the warrantless search of Deane's automobile was supported by probable cause, the court denies Deane's motion to suppress the evidence produced as a result of that search.