COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Huff, Judges Beales and AtLee
Argued at Richmond, Virginia

RYAN AUSTIN COLLINS

OPINION BY
v.        Record No. 1096-14-2        JUDGE RICHARD Y. ATLEE, JR.
JULY 21, 2015
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Cheryl V. Higgins, Judge

Charles L. Weber, Jr., for appellant.

Michael T. Judge, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

On May 7, 2014, a judge convicted Ryan Austin Collins (hereinafter "appellant") for receiving stolen goods. The court sentenced him to three years in prison, with all but two months suspended. Appellant argues that the trial court erred in two respects. First, appellant contends that the trial court erred in denying his motion to suppress evidence related to the stolen motorcycle because law enforcement obtained the evidence through an illegal search, in violation of the Fourth Amendment. Second, appellant submits that the trial court erred in denying his motion to strike because the evidence was insufficient as a matter of law to prove appellant knew the motorcycle was stolen. For the reasons that follow, we find no error and affirm.

I.  Facts of the Case

"On appellate review, we are bound by the familiar principle that 'we must consider the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth, the prevailing party below.'" Robinson v. Commonwealth, 273 Va. 26, 30, 639

S.E.2d 217, 219 (2007) (quoting Rose v. Commonwealth, 270 Va. 3, 6, 613 S.E.2d 454, 455 (2005)). So viewed, the evidence is as follows.

On July 25, 2013, Albemarle County Police Officer Rhodes was on patrol when he saw a motorcycle rapidly approaching his vehicle from behind. Officer Rhodes's radar indicated the motorcycle was going 100 miles per hour. The motorcycle passed Officer Rhodes, at which point he activated his lights and attempted to initiate a stop. The motorcycle then raced off at a speed exceeding 140 miles per hour. Officer Rhodes initially pursued the driver, but ultimately abandoned the pursuit due to the driver's recklessness. This same motorcycle was associated with an earlier eluding incident involving a different police officer, Officer McCall.

Officer Rhodes taped the July 2013 eluding incident on a video recording device in his vehicle, and recorded the motorcycle's license plate number. The plates came back as inactive, and had been so for several years. The plates previously had been associated with Eric Jones (hereinafter "Jones"). Officer Rhodes learned from Jones that he had sold the motorcycle prior to the eluding incident, and another source linked appellant to the motorcycle. Through another officer who had access to appellant's Facebook page, Officer Rhodes obtained two images. The first depicted a residence with several vehicles parked in the driveway and a silver Acura parked in front of the house. The other depicted an orange and black motorcycle parked between a silver Toyota 4-Runner and a black sedan, beside a low brick wall framing the driveway at the same residence. Officer Rhodes recognized the motorcycle as the one he attempted to stop during the July 2013 eluding incident and identified a number of custom features on the bike. Specifically, it had chrome accents and had been "stretched out," meaning a rear piece was added to the motorcycle, a modification generally indicating the motorcycle was intended for drag racing.

On September 10, 2013, appellant was at the DMV to register a silver Acura. Officer Rhodes heard appellant's name on the police radio because other officers were investigating the

- 2 -

vehicle. Officer Rhodes went to speak with appellant and showed him the photos from his Facebook page. Appellant denied knowing anything regarding the location of the house or the motorcycle. Officer McCall, the officer who was present for the earlier eluding incident, also went to the DMV and questioned appellant. Appellant told him that he had not driven a motorcycle for several months.

While the officers questioned appellant at the DMV, Officer Rhodes learned the location of the residence in the photos from other sources. After leaving the DMV, he went to the address, where he saw a "stretched out" motorcycle with visible chrome wheels and swingarm (part of the rear suspension on a motorcycle) parked in a similar location and at a similar angle in the driveway as in one Facebook photo. Someone had partially covered the motorcycle with a tarp. Officer Rhodes took a picture of the covered motorcycle from the sidewalk. He then walked up the driveway, lifted the tarp off of the motorcycle, and confirmed that it was the one from the July 25, 2013 eluding incident. The motorcycle now had different plates. When Officer Rhodes ran the license plate number, he found that the plates were associated with a different vehicle. Officer Rhodes ran the vehicle identification number and learned that the motorcycle had been reported stolen in New York several years earlier.

After surveilling the residence, Officer Rhodes went to the front door. Appellant answered. When asked about the motorcycle, appellant initially denied knowing about it, but later admitted that he had purchased it from Jones. Appellant also stated that he had recently driven it to get new tires. Before that, it had been at his mother's home. It had been in its current location at the residence, where appellant's girlfriend lived and he frequently stayed, for about a week. Less than one hour had passed between Officer Rhodes questioning appellant at the DMV to this point. Officer Rhodes arrested appellant for receiving stolen property. During a search incident to arrest, Officer Rhodes found a key to the motorcycle in appellant's pocket.

## II. Alleged Fourth Amendment Violation

Appellant first argues that the trial court erred in denying his pre-trial motion to suppress because Officer Rhodes violated appellant's Fourth Amendment rights by entering the property and lifting the tarp to view the motorcycle.

### A. Standard of Review

"On appeal, constitutional arguments present questions of law that this Court reviews de novo." Crawford v. Commonwealth, 281 Va. 84, 97, 704 S.E.2d 107, 115 (2011) (citing Shivaee v. Commonwealth, 270 Va. 112, 119, 613 S.E.2d 570, 574 (2005)); see also Archer v. Commonwealth, 26 Va. App. 1, 8, 492 S.E.2d 826, 830 (1997) (stating that "[q]uestions of reasonable suspicion and probable cause to make a warrantless search are subject to *de novo* review"). In our review, we "must give deference to the factual findings of the circuit court and give due weight to the inferences drawn from those factual findings; however, the appellate court must determine independently whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment." Commonwealth v. Robertson, 275 Va. 559, 563, 659 S.E.2d 321, 324 (2008). "The issue of whether an officer acted with probable cause and under exigent circumstances . . . is a mixed question of fact and law that we review de novo." Robinson v. Commonwealth, 273 Va. 26, 39, 639 S.E.2d 217, 224-25 (2007) (citing Brown v. Commonwealth, 270 Va. 414, 419, 620 S.E.2d 760, 762 (2005)).

### B. Relevant Legal Standards: Protected Searches and Exigent Circumstances

Appellant challenges two separate actions of Officer Rhodes: first, entering onto the property, and second, lifting the tarp to view and photograph the motorcycle. Appellant relies heavily on two recent cases from the United States Supreme Court in support of his argument,

- 4 -

United States v. Jones, 132 S. Ct. 945 (2012),[1] and Florida v. Jardines, 133 S. Ct. 1409 (2013).[2] Both cases concern what constitutes a protected search under the Fourth Amendment; neither addresses any exceptions to those protections. The Commonwealth does not dispute that Officer Rhodes's actions constituted searches. Accordingly, the question is what exceptions, if any, may apply to each search. The most relevant exception in this case is exigent circumstances.

Exigent circumstances render lawful an otherwise unlawful search. A number of different conditions may create exigencies justifying a warrantless search, including "the officers' reasonable belief that contraband is about to be removed or destroyed[,] . . . information that the possessors of the contraband are aware that the police may be on their trail," or "whether the officers have strong reason to believe the suspects are actually present in the premises." Verez v. Commonwealth, 230 Va. 405, 410-11, 337 S.E.2d 749, 753 (1985). When evaluating if exigent circumstances existed, "the court must examine the circumstances as they reasonably appeared to the law enforcement officers on the scene." Id. at 411, 337 S.E.2d at 753.

---

[1] In Jones, the Court determined that the government's installation of a GPS device on the defendant's vehicle, and its use of that device to monitor the vehicle's movements, constituted a search under the Fourth Amendment because it "involved a degree of intrusion that a reasonable person would not have anticipated." Jones, 132 S. Ct. at 964. Appellant misconstrues the holding in Jones, ignoring the fact that it primarily concerned the search method, not the object searched. Instead, appellant focuses on the fact that the vehicle in Jones was parked at the defendant's residence, and argues that Jones stands for the unremarkable concept that "[t]he motor vehicle is an effect protected by the Fourth Amendment." Appellant's Br. at 13. More egregiously, appellant fails to note that in Jones, the government forfeited the argument that it had probable cause for the search, and thus the search was lawful under the automobile exception, because it failed to raise the argument below. Jones, 132 S. Ct. at 954.

[2] In Jardines, the Court held that the government's use of a trained police dog to investigate the defendant's home and its immediate surroundings was a "search" within the meaning of the Fourth Amendment. Jardines, 133 S. Ct. at 1417-18. The Court found that an "implicit license typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave," id. at 1415, but that "introducing a trained police dog to explore the area around the home in hopes of discovering incriminating evidence is something else. There is no customary invitation to do *that*," id. at 1416. Appellant merely presents the case as support for the familiar concept that the Fourth Amendment protects the curtilage of the home, a point the Commonwealth readily concedes.

C.  Analysis

*1.  Probable Cause*

For a search to be lawful due to exigent circumstances, Officer Rhodes needed probable cause to search; accordingly, this is a helpful starting place for our analysis.  In support of his argument that Officer Rhodes did not have probable cause to search, appellant contends that Officer Rhodes did not learn that the "motorcycle may have been the same one involved in an earlier eluding incident" until after he trespassed onto the property.  Appellant's Br. at 16.  This is facially incorrect, as evidence at trial indicated that from the public street, Officer Rhodes could see, as could any other passerby, a number of features unique to this motorcycle.  These include the unusual length of the motorcycle due to it having been "stretched out" for drag racing, which was clearly visible even when under the tarp.  In addition, the tarp did not extend to the ground, leaving the customized chrome wheel covers and swingarm uncovered.  These are all distinctive features Officer Rhodes recognized from the motorcycle he encountered, and videorecorded, during the eluding incident.  Furthermore, Officer Rhodes possessed photos of the same motorcycle before someone covered it with a tarp, parked at a similar angle and in the same location at that residence.  In light of these facts, Officer Rhodes unquestionably had probable cause to believe that the motorcycle was the one from the eluding incident before entering the property.[3]

---

[3] Appellant also argues that Officer Rhodes did not possess probable cause to search because Officer Rhodes did not and does not possess probable cause to charge appellant with eluding, as he could not know if appellant was the person driving the motorcycle on the evening in question.  This argument confuses the probable cause needed to arrest and charge an individual with the probable cause required to conduct a lawful search.  Officer Rhodes had numerous reasons to believe that the motorcycle was the one involved in the eluding incident and that a search would provide information leading to the individual who committed the crime.  Officer Rhodes's decision not to pursue eluding charges against appellant, regardless of the reason, did not vitiate the probable cause he had to search.

## 2. Protected Searches and the Curtilage

Having determined that Officer Rhodes had probable cause to search, we now turn to the individual "searches." The first "search" challenged is Officer Rhodes's entry onto the property to examine the motorcycle. "[T]he area 'immediately surrounding and associated with the home'—what our cases call the curtilage—[i]s 'part of the home itself for Fourth Amendment purposes.'" Jardines, 133 S. Ct. at 1414 (quoting Oliver v. United States, 466 U.S. 170, 180 (1984)). "This area around the home is 'intimately linked to the home, both physically and psychologically,' and is where 'privacy expectations are most heightened.'" Id. (quoting California v. Ciraolo, 476 U.S. 207, 213 (1986)).

In determining whether the area in question constitutes curtilage, we generally consider:

> "[1] the proximity of the area claimed to be curtilage to the home,
> [2] whether the area is included within an enclosure surrounding the
> home, [3] the nature of the uses to which the area is put, and [4] the
> steps taken by the resident to protect the area from observation by
> people passing by."

Robinson v. Commonwealth, 45 Va. App. 592, 605, 612 S.E.2d 751, 758 (2005) (quoting United States v. Dunn, 480 U.S. 294, 301 (1987)). In Robinson, the record contained, and we examined in detail, abundant testimony directly addressing these factors, such as the specific activities performed in the spot where the search took place and exact distances from the house. In the absence of a similarly detailed record here, we decline to conjecture the facts necessary to perform a precise analysis. In any event, we can assume without deciding that Officer Rhodes entered the curtilage when he walked up the driveway because numerous exigencies justified the search; therefore, the assumption fails to alter the ultimate lawfulness of the intrusion under the Fourth Amendment.

## 3. Exigent Circumstances

Examining the circumstances as they reasonably appeared to Officer Rhodes, numerous exigencies justified both his entry onto the property and his moving the tarp to view the motorcycle

and record its identification number. As a preliminary matter, Officer Rhodes had a reasonable belief that the motorcycle could be removed or destroyed, as a motorcycle is readily movable. In fact, appellant recently had driven the motorcycle from where he had originally stored it at his mother's home, to a service station, before bringing it to the residence where Officer Rhodes found it. Moreover, the same motorcycle had successfully eluded the police on two previous occasions, and could potentially have done so again here. However, mere mobility is far from the only exigency Officer Rhodes faced. Officer Rhodes had, within the same hour, spoken with appellant at the DMV where appellant denied owning or knowing anything about the motorcycle or the residence in the picture. Accordingly, Officer Rhodes not only knew that appellant was aware that law enforcement was investigating incidents involving the motorcycle and where they might find it, but even more, he knew that appellant had an interest in concealing or destroying evidence in order to perpetuate his lies to law enforcement. In fact, when Officer Rhodes arrived at the house, he saw that someone had placed a tarp over the motorcycle, indicating a possible attempt to conceal it. In the brief time between when appellant returned to the house and when Officer Rhodes knocked on the door, he had changed his clothing from what he wore at the DMV to jeans, a heavy long sleeve shirt, and work boots similar to those worn during the eluding incident, despite it being over 90 degrees that day. Appellant even had the key to the motorcycle in his jeans pocket. Although the search took place before appellant returned home and changed, these actions further speak to the reasonableness of Officer Rhodes's belief that appellant might attempt to relocate the motorcycle. Together, the facts indicate that appellant not only possessed an interest in, but also the ability and probable intention to, move the motorcycle out of the reach of law enforcement. See Thims v. Commonwealth, 218 Va. 85, 91, 235 S.E.2d 443, 446 (1977) (holding that exigent circumstances existed when law enforcement went onto private property to examine a stolen vehicle, despite the fact that defendant, and the keys to the vehicle, was in police custody). In view of the above, we

conclude that sufficient exigencies existed for Officer Rhodes to enter the property and examine the motorcycle.

Furthermore, the Supreme Court of Virginia has previously upheld a search where an officer walked up a defendant's driveway and recorded a stolen car's vehicle identification number, stating:

> [The officer] had probable cause to believe that the car was the fruit of a crime [and] that it might be stolen . . . .  He then for the first time had probable cause to seize and search the vehicle.  To do so he had the right to enter the driveway and open the car door to determine the identification number.  Such an investigation, when made on public property or property open to the public, has been held not to be a search, or if a search, to be a reasonable one, even in the absence of probable cause.  Here, while the investigation was made on private property, it was grounded on probable cause.

Id. at 91-92, 235 S.E.2d at 447 (citations omitted).  The Court also upheld the search on the alternative grounds that "in addition to probable cause there were exigent circumstances arising from the inherent mobility of a motor vehicle."  Id. at 93, 235 S.E.2d at 447.[4]  Accordingly, for the reasons stated, we find that Officer Rhodes acted lawfully under the Fourth Amendment in entering the property and searching the motorcycle.

### III.  Sufficiency of the Evidence

Appellant's second assignment of error challenges the sufficiency of the evidence that he knew that the motorcycle was stolen.  In support of this argument, he first alleges that Officer

---

[4] We note that the United States Supreme Court has suggested that a search of a vehicle on private property requires more than mere mobility, as is generally sufficient under the "automobile exception."  Coolidge v. New Hampshire, 403 U.S. 443, 460 (1971) (plurality opinion) (stating that "'exigent circumstances' justify the warrantless search of 'an automobile stopped *on the highway*,' where there is probable cause, because the car is 'movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained'" (quoting Chambers v. Maroney, 399 U.S. 42, 51 (1970))); see also California v. Carney, 471 U.S. 386, 392-93 (1985) (discussing the automobile exception's relevance "[w]hen a vehicle is being used on the highways, or if it is readily capable of such use and is found stationary in a place *not regularly used for residential purposes* . . ." (emphasis added)).  Here, we need not rely on the automobile exception, for exigencies existed aside from the inherent mobility of the motorcycle.

Rhodes lied repeatedly under oath and intentionally misled the court. Next, he argues that the trial court was plainly wrong in finding that Officer Rhodes's testimony was nearly identical to Officer McCall's testimony, and therefore could be treated as credible. Finally, he argues that Jones's testimony was inherently incredible.

## A. Standard of Review

"Whether the evidence adduced is sufficient to prove each of those elements is a factual finding, which will not be set aside on appeal unless it is plainly wrong." Lawlor v. Commonwealth, 285 Va. 187, 223-24, 738 S.E.2d 847, 868 (2013) (citing George v. Commonwealth, 242 Va. 264, 278, 411 S.E.2d 12, 20 (1991)). "In reviewing that factual finding, we consider the evidence in the light most favorable to the Commonwealth and give it the benefit of all reasonable inferences fairly deducible therefrom." Id. at 224, 738 S.E.2d at 868 (citations omitted).

## B. Analysis

Appellant argues that there was insufficient evidence that he knew the motorcycle was stolen. In support of this argument, he alleges that both Officer Rhodes[5] and Jones[6] lied under

---

[5] Appellant presents a number of muddled arguments and examples ostensibly showing that Officer Rhodes intentionally misled the trial court. Although appellant failed to include citations to the transcript to support most of his claims on this issue, it appears that during the May 7, 2014 trial, Officer Rhodes struggled to recall certain facts he testified to during the October 17, 2013 preliminary hearing (such as exact dates or numbers of times he spoke to certain individuals or went to certain locations). During a demanding cross-examination, appellant's counsel pressed on these inconsistencies as evincing deceptive intent. Officer Rhodes apologized, stating that he felt "somewhat out of it" because he was sick, taking medication, and had been at the doctor that morning. App. at 206.

[6] We decline to pick apart the specific testimony appellant highlights as inherently incredible to explain why the fact-finder reasonably believed it. Appellant ultimately wishes for this Court to determine "the most logical inference" the fact-finder should have drawn from Jones's testimony, and what Jones "most likely told" appellant when he purchased the motorcycle. Appellant's Br. at 32-33. However, we, as an appellate court, may not "preside

oath. He also argues that the trial court was plainly wrong in finding that Officer Rhodes's

testimony was nearly identical to Officer McCall's testimony, and therefore could be deemed

credible despite some inconsistencies.[7]

When appellant challenged the sufficiency of the evidence of guilty knowledge at trial—

specifically pointing to Jones's and Officer Rhodes's purported deception or dishonesty—the

trial court considered the evidence, and found a substantial number of inconsistencies in

appellant's statements which called into question his argument that he did not know the

motorcycle was stolen. Even if the fact-finder did not believe Jones when he testified that he

told appellant that the motorcycle had no title and he assumed it was stolen, it could have

concluded appellant knew based upon his numerous subsequent lies to law enforcement. When

---

*de novo* over a second trial." Haskins v. Commonwealth, 44 Va. App. 1, 11, 602 S.E.2d 402, 407 (2004).

[7] Appellant challenges the trial court's conclusion that Officer McCall's testimony was substantially similar to Officer Rhodes's, because Officer McCall was not present when Officer Rhodes questioned appellant at the residence, and some differences existed between their questioning of appellant at the DMV. However, the trial judge's conclusion was just one small piece of his ultimate finding that sufficient evidence existed of appellant's knowledge that the motorcycle was stolen. Specifically, after noting that Jones testified that he told appellant that he believed the vehicle was stolen because it had no title, the judge continued:

> So, then the Court looks at the testimony of the defendant when he is confronted by the officers, and there did appear to be some confusion by Officer Rhodes as to what he remembered, but as was true of defense witnesses, these events happened a while ago. However, the Court would note that Officer McCall's testimony was almost identical to Officer Rhodes' testimony. Officer McCall testified that he responded to the DMV, and after giving the defendant Miranda he asked him about the motorcycle, and he said the defendant said that he had not owned a motorcycle in a month, that he had not driven any motorcycles, that the last motorcycle in months, the last motorcycle he owned was green and that that was all that he knew.

App. at 262. The judge went on to discuss the other inconsistencies in the testimony, discussed *infra*, ultimately concluding that together, the evidence supported a finding that appellant knew that the bike was stolen.

- 11 -

questioned at the DMV, appellant told both Officer Rhodes and Officer McCall that he had never seen the motorcycle, despite the fact that he had a photo of it on his Facebook profile and Officer Rhodes arrested him at the residence where it was parked later that same day. During the questioning at the DMV, appellant also stated that he had not owned a motorcycle for a month and that the last motorcycle he owned was green. The trial court noted that, adopting the defense's theory that appellant did not own the motorcycle at the time of the eluding incident, a reasonable innocent person in appellant's position would have acknowledged that he owned the motorcycle, but explained that he did not own it on the date in question. Instead, appellant lied, which the trial court may reasonably consider as evidence of his knowledge that the bike was stolen. See Hawkins v. Commonwealth, 288 Va. 482, 486, 764 S.E.2d 81, 84 (2014) (noting that a fact-finder may properly consider a false or evasive account as evidence of guilty knowledge (citing Covil v. Commonwealth, 268 Va. 692, 696, 604 S.E.2d 79, 82 (2004))).

Furthermore, the fact-finder could have considered numerous other inconsistencies in appellant's argument to the trial court and statements to law enforcement. For example, appellant's mother testified that appellant had parked the motorcycle at her residence for most of August of 2013, where it sat plainly visible. Appellant's girlfriend testified that she had never seen the motorcycle until he brought it to her new residence in early September, despite the fact that she was living out of appellant's mother's home part-time and frequently visited and spent nights there. In addition, there was evidence of an attempt to conceal the motorcycle, such as someone changing the motorcycle's tags between the date of the eluding incident and the date of the search. Moreover, as noted above, after the officers questioned appellant at the DMV, Officer Rhodes saw that the previously uncovered motorcycle was now under a tarp. Finally, when Officer Rhodes confronted appellant at the residence, he changed his story several times,

first telling Officer Rhodes that he did not own or know anything about the motorcycle, then that it belonged to a friend, before finally admitting that he had purchased the motorcycle from Jones.

"When weighing the evidence, the fact finder is not required to accept entirely either party's account of the facts. The fact finder may reject that which it finds implausible, yet accept other parts which it finds to be believable." Barnes v. Commonwealth, 33 Va. App. 619, 630, 535 S.E.2d 706, 711-12 (2000) (citing Barrett v. Commonwealth, 231 Va. 102, 107, 341 S.E.2d 190, 193 (1986)). Perhaps another fact-finder could have found Jones or Officer Rhodes not credible or their testimony unbelievable, or agreed with appellant's interpretation of the facts instead of the Commonwealth's. However, the fact-finder here did not, and we are "not permitted to reweigh the evidence." Nusbaum v. Berlin, 273 Va. 385, 408, 641 S.E.2d 494, 507 (2007). The trial court was not plainly wrong to conclude that sufficient credible evidence existed to find that appellant knew the bike was stolen; accordingly, it did not err in denying appellant's motion to strike.

IV. Conclusion

For the foregoing reasons, we find the trial court did not err in denying appellant's motion to suppress or motion to strike. Accordingly, we affirm the ruling of the trial court.

Affirmed.