PRESENT: Lemons, C.J., Goodwyn, Mims, McClanahan, Powell, and Kelsey, JJ., and Millette, S.J.

RYAN AUSTIN COLLINS

OPINION BY
CHIEF JUSTICE DONALD W. LEMONS
SEPTEMBER 15, 2016

v. Record No. 151277

COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, we consider whether the Court of Appeals erred in affirming the judgment of conviction upon consideration of the trial court's denial of a motion to suppress evidence obtained when police conducted a warrantless search of a stolen motorcycle parked in the driveway of a home where Ryan Austin Collins ("Collins") resided.

I.   Facts and Proceedings

Collins was convicted in the Circuit Court of Albemarle County ("trial court") of receiving stolen property in violation of Code § 18.2-108, and sentenced to three years' imprisonment with all but two months suspended.  Prior to trial, Collins moved to suppress the Commonwealth's evidence linking him to a stolen motorcycle.  The trial court denied Collins' motion to suppress and held that the police search, although conducted without a warrant, did not violate the Fourth Amendment.  The Court of Appeals affirmed the trial court's ruling and Collins now challenges that decision.

A.   The Eluding Incidents

On June 4, 2013, Officer Matthew McCall of the Albemarle County Police Department was patrolling on Route 29 near the border of Albemarle County and the City of Charlottesville when he observed a traffic infraction by the operator of an orange and black motorcycle with an

extended frame. Officer McCall activated his emergency lights and attempted to stop the motorcycle, but the motorcycle eluded him at a high rate of speed.

Several weeks later, on July 25, 2013, Officer David Rhodes, also of the Albemarle Police Department, was in his police car on the Route 250 Bypass when he observed an orange and black motorcycle traveling at 100 miles per hour in a 55 mph zone. Officer Rhodes engaged his emergency equipment and pursued the motorcycle. Instead of stopping, the motorcyclist increased his speed to at least 140 mph and sped away from the police car. In the interest of safety, Officer Rhodes abandoned his pursuit. However, Officer Rhodes' police car video camera recorded the incident, and police were able to use this footage to obtain a still photograph of the motorcycle, including its license plates.

The motorcycle was an orange and black Suzuki with chrome accents and a "stretched out" rear wheel, indicating that it had been modified for drag racing. Officer Rhodes could not identify the driver through the darkly tinted helmet, but he observed that the motorcyclist wore blue jeans and "tan Timberland-type work boots." The motorcyclist who eluded Officer McCall two months earlier also wore jeans and "Timberland-type-style boots." After comparing notes and identifying "an awful lot of similarities" between the two eluding incidents, Officers McCall and Rhodes concluded the same motorcyclist had eluded each of them.

When Officer Rhodes entered the motorcycle's license plate number in a police database, he discovered that the tags were "not on file" and had been inactive for several years. The license plate was most recently registered to Eric Jones ("Jones"). In the course of his investigation, Officer Rhodes learned that Jones had sold the motorcycle to Collins before the eluding incidents. Later, at trial, Jones testified that he sold Collins the motorcycle in April 2013 with the caveat that the motorcycle lacked title and was stolen.

2

[COMMONWEALTH'S ATTORNEY]: And so do you know
why [the motorcycle] didn't have a title?

[ERIC JONES]: Possibly stolen.

Q: Possibly stolen or you knew it was …

A: Yeah, yeah, it was stolen.

Q: It was stolen[?]

A: Yeah.

….

Q: And did you at some point then sell it to someone?

A: Yeah.

Q: And who did you sell to?

A: Sold it to Ryan.

Q: And who is Ryan? Do you know his last name?

A: Collins.

….

Q: All right, and when you sold it to Ryan Collins, did you tell
him about the problem with the motorcycle, about it being stolen?

A: Yeah, I did.

Q: And did you talk to him about the fact that it didn't have a
title?

A: Yeah.

## B. The Search

On September 10, 2013, Albemarle Police responded to the Department of Motor

Vehicles ("DMV") to investigate an unrelated matter[1] involving Collins. Upon hearing Collins'

---

[1] The record indicates that police arrived at the DMV after receiving a report that Collins
was attempting to register a stolen vehicle (a silver Acura sedan). Collins had allegedly forged

3

name on the police radio, Officers Rhodes and McCall also responded to the DMV to question Collins since he was a suspect in the motorcycle eluding incidents. Officer McCall advised Collins of his *Miranda* rights, and Collins agreed to speak to the officers. When questioned about the motorcycle, Collins denied knowing anything about it, and told the officers that he "hadn't ridden a motorcycle in months." Meanwhile, Officer Rhodes searched a social media website (Facebook) and found two photographs posted on Collins' Facebook page depicting the motorcycle which appeared to have been involved in the eluding incidents. The photographs showed the orange and black motorcycle parked in a driveway next to the vehicle Collins was attempting to register at the DMV.

Officer Rhodes later testified that upon seeing the photographs of the motorcycle on Collins' Facebook page, he "knew 100% sure that . . . was the same motorcycle that had not stopped for me on the bypass based on looking at it. It was very distinct and I knew, absolutely no question in my mind that was the same motorcycle." However, when the officers showed Collins the Facebook photographs, Collins denied any knowledge of the motorcycle or the house depicted in the photographs.

After the questioning concluded, Collins left the DMV and the officers continued their investigation. Officer Rhodes learned from an informant that the house in the Facebook photograph was located on Dellmead Lane in the City of Charlottesville near the border of Albemarle County. Less than half an hour later, Officer Rhodes located the house and parked along the street. From his position on the street, Officer Rhodes could see what appeared to be a motorcycle covered with a white tarp. At trial, Officer Rhodes testified that "a quarter of the wheel [was] sticking out from underneath the cover" and that despite the tarp, he recognized the

the title to the Acura in an attempt to reduce the taxes on the vehicle, but the forgery charge was subsequently dismissed and is not relevant to this appeal.

distinct chrome accents and "stretched out" shape of the motorcycle. Additionally, the location and angle of the partially covered motorcycle matched that of the motorcycle in Collins' Facebook photographs.

Officer Rhodes then walked onto the property, "a car length or two" up the driveway, between the street and the front steps of the house. While standing on the driveway, Officer Rhodes uncovered the motorcycle and confirmed that it appeared to be the same orange and black Suzuki that had eluded him on July 25, 2013. He then recorded the motorcycle's vehicle identification number or "VIN." A computer search of the VIN revealed the motorcycle had been "stolen out of New York" several years before. After gathering this information, Officer Rhodes re-covered the motorcycle, left the property, and returned to his police car to conduct surveillance and wait for Collins.

Shortly thereafter, a vehicle dropped off Collins at the Dellmead Lane residence. Officer Rhodes returned to the house and knocked on the door, which Collins answered. Although it was "over 90 [degrees] that day," Collins came to the door dressed in jeans, a sweatshirt, and Timberland-style boots. Officer Rhodes later testified that "at the DMV 30 minutes prior" Collins had been wearing "shorts and flip flops and a t-shirt." When asked about the motorcycle, Collins initially said he "didn't know anything about it." He then told Officer Rhodes it belonged to a friend. Eventually, Collins admitted that he purchased the motorcycle, without a title, from Eric Jones. At trial during direct examination by the Commonwealth's Attorney, Officer Rhodes recounted his conversation with Collins:

> [COMMONWEALTH'S ATTORNEY]: [T]ell the judge, please, when [Collins] comes to the door what happened next?
>
> [OFFICER RHODES]: I asked him, I said do you mind if I speak with you, and he said sure. We came. . . outside, and I started inquiring about the motorcycle. I asked him [if] he knew about this

5

motorcycle, [and] he told me he didn't know anything about it, it was a friend's. . . . [Collins] then told me "well I did ride it over, bring it over from my mom's, over in Northfield over to Dellmead Avenue, but that had been a while and I don't ever drive it, because I don't have a motorcycle license."

....

Q: Did he tell you then, ultimately, whose motorcycle it was?

A: He told me it was ... it was his. He told me ultimately he had bought it, he had paid $3,500 to Eric Jones for the motorcycle, and that's where the tag comes back into play ... which corroborated that story that that tag had involvement with Eric Jones....

Q: [Collins] bought the motorcycle from Eric Jones?

A: [Yes, t]he motorcycle from Eric Jones, and [Collins] had paid $3,500 for it, and there was no title for the motorcycle.

Officer Rhodes then arrested Collins for receiving stolen property. As he searched Collins incident to the arrest, Officer Rhodes discovered a key to the motorcycle in Collins' pocket.

### C. Collins' Motion to Suppress

A grand jury indicted Collins for possession of stolen property, in violation of Code § 18.2-108. Collins moved to suppress the evidence obtained by Officer Rhodes on Fourth Amendment grounds. Collins argued:

What we're really talking about here is trespassing on real property. Trespassing on the curtilage of a home for the purposes of doing investigation. I would conclude that Officer Rhodes violated the law in trespassing on private property. It was for the purpose of the search. He has no probable cause to do so. He certainly had no exigent circumstances. And any information that he gained as a result of that illegal trespass including [the] VIN number [should be suppressed].

The Commonwealth responded:

Your Honor, while there is a Constitutional Fourth Amendment action against a [un]reasonable search and seizure, Mr. Collins' arguments are misguided. The search that Officer Rhodes conducted of the orange motorcycle [on] September 10th, 2013 was reasonable and lawful. The Supreme Court has long

6

recognized an automobile exception to the traditional requirement of probable cause in a warrant. In *Carroll v. United States*, the Court concluded that automobiles were readably mobile and therefore eas[ily] moved from a jurisdiction. Probable cause alone is enough to justify a search and a warrant is unnecessary. The Supreme Court confirmed this in *Maryland v. Dyson* …where the [Court] explicitly ruled that warrantless search of a vehicle [was] lawful within the Fourth Amendment.

The Commonwealth's Attorney further argued that Officer Rhodes had probable cause because he had seen on Collins' Facebook page, a photograph of the uncovered motorcycle parked in the same spot in front of the house. Additionally, the motorcycle had chrome wheels and an extended sway arm[2] which made it longer than a standard motorcycle. In response, Collins argued that the automobile exception was inapplicable since the motorcycle was parked and located on private property.

Your Honor, the automobile exception to my understanding is the search of the automobile not a search for an automobile… [The] [a]utomobile exception was created for officers on the street when they stop somebody and they know there is going to be maybe contraband in the vehicle and it's an exception to a warrant requirement. That exception does not apply in this case. That vehicle was parked in a private driveway.

After hearing argument from both parties, the trial court ruled on Collins' motion. The trial court held that Officer Rhodes did not violate Collins' Fourth Amendment rights.

So the Court finds that … where this is in an area where it is exposed to the public where the officer asked Mr. Collins about the motorcycle and [Collins] indicated he didn't know anything about it, where it's in the exact same location [as the Facebook photograph], where it matches the officer's description … and where it has the chrome wheels, the Court finds that there was probable cause for the search and therefore it was not an

---

[2] An extended sway arm, or swingarm, refers to the part of a sport motorcycle to which the rear wheel is attached, making it project further behind the operator's seat than normal so as to give the motorcycle a longer overall wheelbase and lower profile. Frequently, it is also used to equip a sport motorcycle with a wider rear tire.

unreasonable governmental intrusion. The Court is going to deny
the motion to suppress.

A bench trial ensued, and the trial court convicted Collins of receiving stolen property.

### D. Court of Appeals Opinion

Collins appealed his conviction to the Court of Appeals. The Court of Appeals affirmed Collins' conviction in a published opinion. *Collins v. Commonwealth*, 65 Va. App. 37, 773 S.E.2d 618 (2015). The Court of Appeals held that Officer Rhodes "unquestionably had probable cause to believe the motorcycle was the one from the eluding incident." *Id.* at 44, 773 S.E.2d at 622. The Court of Appeals also concluded that Officer Rhodes' warrantless search was justified under the exigent circumstances exception to the Fourth Amendment's warrant requirement. *Id.* at 46-48, 773 S.E.2d at 623-24. The Court of Appeals declined to address the automobile exception on the basis that other "exigencies existed aside from the inherent mobility of the motorcycle." *Id.* at 48 n.4, 773 S.E.2d at 624 n.4. Upon petition we granted Collins' appeal on the following assignment of error:

> The trial court erred in denying Collins' motion to suppress the evidence related to the motorcycle because the officer illegally trespassed onto private property for [the] purpose of conducting a search in violation of his Fourth Amendment right to be free of unreasonable searches and seizures. The Court of Appeals of Virginia erred in upholding the judgment of the trial court and finding that the officer acted lawfully under the Fourth Amendment in entering the property and searching the motorcycle.

### II. Analysis

### A. Standard of Review

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A defendant's claim that evidence was seized in violation of the Fourth Amendment presents

mixed questions of law and fact that this Court reviews de novo on appeal. *Jones v. Commonwealth*, 277 Va. 171, 177, 670 S.E.2d 727, 731 (2009). The Court gives deference to the trial court's factual findings, but will independently determine whether the manner in which evidence was obtained meets the requirements of the Fourth Amendment. *Id.* Moreover, "[t]he defendant bears the burden of establishing that the denial of his suppression motion was reversible error." *Glenn v. Commonwealth*, 275 Va. 123, 130, 654 S.E.2d 910, 913 (2008).

### B. Automobile Exception to the Fourth Amendment Warrant Requirement

Before the Court of Appeals and before this Court, Collins argued that Officer Rhodes trespassed when he walked up the driveway of Collins' residence without permission or a search warrant. Collins also argued that Officer Rhodes conducted a warrantless, unconstitutional search when he removed the motorcycle tarp to reveal its VIN–evidence which ultimately confirmed that the motorcycle was stolen. While the Court of Appeals analyzed the issue based upon probable cause and exigent circumstances, this case is more appropriately resolved under the automobile exception.

In this case, Officer Rhodes lacked a search warrant when he walked up Collins' driveway and searched the motorcycle by removing the tarp and locating the VIN. "Warrantless searches, of course, are per se unreasonable, subject to a few well-defined exceptions." *Abell v. Commonwealth*, 221 Va. 607, 612, 272 S.E.2d 204, 207 (1980); *see also Katz v. United States*, 389 U.S. 347, 357 (1967). These narrowly delineated exceptions include: consent,[3] search

---

[3] *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) ("It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent.").

incident to a lawful arrest,[4] plain view,[5] and exigent circumstances.[6] We have recognized

several common examples of exigent circumstances such as hot pursuit, the imminent

destruction of evidence, and the possibility of danger to others. *Verez v. Commonwealth*, 230

Va. 405, 410, 337 S.E.2d 749, 752-53 (1985). In this case, however, neither the Commonwealth

nor the trial court invoked the exigent circumstances exception. Although the Court of Appeals

based its decision on exigent circumstances, we do not find it necessary to independently assess

whether exigent circumstances existed here. Rather, the facts of this case are more properly

addressed by a different exception to the warrant requirement: the automobile exception.

      The origins of the automobile exception reflect the inherent exigency associated with the

readily mobile nature of vehicles. *See Pennsylvania v. Labron*, 518 U.S. 938. 940 (1996) ("Our

first cases establishing the automobile exception to the Fourth Amendment's warrant

requirement were based on the automobile's ready mobility, an exigency sufficient to excuse

failure to obtain a search warrant once probable cause to conduct the search is clear.").

Nonetheless, the Supreme Court of the United States has expressly held that the automobile

exception is a distinct and independent exception to the warrant requirement.

> The Fourth Amendment generally requires police to secure a
> warrant before conducting a search. As we recognized nearly 75
> years ago in *Carroll v. United States*, 267 U.S. 132, 153 (1925),
> there is an exception to this requirement for searches of vehicles.
> And under our established precedent, the "automobile exception"

---

[4] *See Morris v. Commonwealth*, 208 Va. 331, 334, 157 S.E.2d 191, 194 (1967) ("[W]here incident to a valid arrest," officers may lawfully search and seize personal effects without a search warrant.") (citing *United States v. Jeffers*, 342 U.S. 48, 51 (1951)).

[5] *See Jones v. Commonwealth*, 279 Va. 665, 672, 691 S.E.2d 801, 804 (2010) (under the "plain view" doctrine, officers who are lawfully present on a property but who lack a search warrant may nonetheless seize items which are in plain view and immediately incriminating).

[6] If there is both an exigency and sufficient probable cause to believe a crime has occurred, police may conduct a lawful search even absent a warrant. *See Verez v. Commonwealth*, 230 Va. 405, 410, 337 S.E.2d 749, 752-53 (1985) (citing *Payton v. New York*, 445 U.S. 573 (1980)).

has no separate exigency requirement. We made this clear in
*United States v. Ross*, 456 U.S. 798, 809 (1982), when we said that
in cases where there was probable cause to search a vehicle "a
search is not unreasonable if based on facts that would justify the
issuance of a warrant, even though a warrant has not been actually
obtained."

*Maryland v. Dyson*, 527 U.S. 465, 466-67 (1999) (internal citations omitted). The Supreme

Court has articulated a simple, bright-line test for the automobile exception: "[i]f a car is readily

mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . .

permits police to search the vehicle without more." *Id.* at 467 (citing *Labron*, 518 U.S. at 940).

Applying that test to this case, we hold that Officer Rhodes' warrantless search of the motorcycle

was justified under the automobile exception to the warrant requirement of the Fourth

Amendment.

1. Officer Rhodes Had Probable Cause to Believe the Motorcycle Was Contraband

The facts of this case supported a finding of probable cause sufficient to allow Officer

Rhodes to search the motorcycle under the automobile exception. As a result of his prior

investigation, Officer Rhodes had several reasons to believe the motorcycle was contraband.

Eric Jones had informed Officer Rhodes that he sold Collins the motorcycle with the warning

that it was stolen. Therefore, when he arrived at the Dellmead Lane residence on September 25,

2013, Officer Rhodes already suspected that the motorcycle which had eluded him and Officer

McCall was stolen property. The motorcycle was in plain view from the street and Officer

Rhodes immediately recognized its distinct features. In denying Collins' motion to suppress, the

trial court found that, despite the tarp, the motorcycle's unique "stretched out" frame and chrome

wheels were visible to Officer Rhodes from his lawful position on the street. The location and

angle of the partially covered motorcycle matched that of the uncovered motorcycle in Collins'

11

Facebook photograph. Accordingly, both the trial court and the Court of Appeals properly held that Officer Rhodes had probable cause to search the motorcycle.

2. Automobile Exception Applies Even When Vehicle is Not "Immediately Mobile"

On brief Collins argued that "no reasonable law enforcement officer could claim that, under these facts, the motorcycle was in imminent danger of being destroyed." (Opening Br. at 30). He further argued:

> Had Collins emerged from the residence, removed the tarp and attempted to drive the motorcycle away, Officer Rhodes would have had clear evidence linking Collins to the motorcycle and could have immediately approached him to further investigate the suspected incident of eluding.

(Opening Br. at 28). Collins contends that because Officer Rhodes was conducting surveillance of the residence, Collins could not have removed the tarp, started the motorcycle, and fled the premises without first being apprehended. He suggests that Officer Rhodes could have stopped the motorcycle by blocking the driveway with his police car.

These arguments both defy common sense and misapply the automobile exception, which is a bright-line test. The suggestion that Officer Rhodes could have "immediately approached [Collins] to further investigate" conveniently ignores the fact that this motorcycle had twice eluded police at high speeds. And, since he had questioned Collins about the motorcycle earlier that same day, Officer Rhodes had good reason to suspect that Collins would return from the DMV and speed away on the motorcycle in order to hide it and potentially remove the VIN.[7]

---

[7] Regardless of whether it was "immediately mobile" at the precise moment of the search, the motorcycle and its rider nonetheless posed a significant flight risk. For example, in the short time between his DMV encounter with police and his interaction with Officer Rhodes on the doorstep of the Dellmead Lane residence, Collins changed from flip flops and shorts into boots, jeans, and a sweatshirt. Generally, a Fourth Amendment analysis is not a retrospective review and we are only concerned with those "facts known to the officer at the time" [of the search]. *Sidney v. Commonwealth*, 280 Va. 517, 525, 702 S.E.2d 124, 129 (2010). However, as the Court

12

Moreover, "[a] vehicle's inherent mobility—not the probability that it might actually be set in motion—is the foundation of the automobile exception's mobility rationale." *United States v. Smith*, 456 Fed. Appx. 200, 209 (4th Cir. 2011). The Fourth Circuit in *Smith* held that:

> [T]he mobility rationale does not turn on case-by-case determinations by agents in the field regarding either the probability that a vehicle could be mobilized or the speed with which movement could be achieved.

*Id.* (citing *United States v. Navas*, 597 F.3d 492, 498-500 (2d Cir. 2010) (under the automobile exception, police were permitted to search a trailer even though it was unattached from the tractor trailer cab)). Furthermore, the Supreme Court has expressly held that individuals enjoy a "lesser degree of protection" with respect to their privacy interests in automobiles. *California v. Carney*, 471 U.S. 386, 390 (1985); s*ee also Missouri v. McNeely*, 569 U.S. ___, 133 S. Ct. 1552, 1565 (2013) ("[P]eople are accorded less privacy in automobiles because of the compelling governmental need for regulation.") (citing *Carney*, 471 U.S. at 392).

> [A]lthough ready mobility alone was perhaps the original justification for the vehicle exception, our later cases have made clear that ready mobility is not the only basis for the exception … Even in cases where an automobile was not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justified application of the vehicular exception.

*Carney*, 471 U.S. at 391 (citing *Cady v. Dombrowski*, 413 U.S. 433, 441-42 (1973) (recognizing the automobile exception even in cases where the "possibilities of the vehicle's being removed or evidence in it destroyed were remote, if not nonexistent")).

---

of Appeals noted below, the fact that Collins had changed into motorcycle clothes and had the key in his pocket "further speak[s] to the reasonableness of Officer Rhodes' belief that … [Collins] not only possessed an interest in, but also the ability and probable intention to move the motorcycle out of the reach of law enforcement." *Collins*, 65 Va. App. at 47, 773 S.E.2d at 623.

Consequently, in this case, we need not decide whether the motorcycle was immediately mobile at the precise moment of the search. The bright-line test does not require us to hypothesize whether it would have been technically possible for Collins to uncover the motorcycle, start the engine, and flee from Officer Rhodes. *See McCary v. Commonwealth,* 228 Va. 219, 228, 321 S.E.2d 637, 642 (1984) (the automobile exception applies "even if there is no risk of removal of the vehicle or its contents"). The mere fact that the stolen motorcycle was "clearly operational and therefore readily movable" governs our decision. *United States v. Brookins*, 345 F.3d 231, 237 (4th Cir. 2003).

3. Automobile Exception May Apply to Vehicles Parked on Private Property

During the suppression hearing, Collins argued that the automobile exception does not apply to a vehicle parked in a private driveway. The trial court did not consider this question, but the Court of Appeals addressed the issue and appeared to agree with Collins. In a footnote, the Court of Appeals implied that the automobile exception does not apply to the search of a vehicle on private property.[8] *See Collins v. Commonwealth*, 65 Va. App. at 48 n.4, 773 S.E.2d at

---

[8] Footnote 4 of the Court of Appeals' opinion stated:
> We note that the United States Supreme Court has suggested that a search of a vehicle on private property requires more than mere mobility, as is generally sufficient under the automobile exception. *Coolidge v. New Hampshire*, 403 U.S. 443, 460 (1971) (plurality opinion) (stating that "'exigent circumstances' justify the warrantless search of 'an automobile stopped on the highway,'" where there is probable cause, because the car is 'movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained'" (quoting *Chambers v. Maroney*, 399 U.S. 42, 51 (1970))); *see also California v. Carney*, 471 U.S. 386, 392-93 (1985) (discussing the automobile exception's relevance "[w]hen a vehicle is being used on the highways, or if it is readily capable of such use and is found stationary in a place not regularly used for residential purposes . . ." (emphasis added)). Here, we need not rely on the automobile exception, for exigencies existed aside from the inherent mobility of the motorcycle.

624 n.4. (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 460 (1971) (plurality opinion) and *California v. Carney*, 471 U.S. 386, 392-93 (1985)). However, the Court of Appeals misconstrued the automobile exception when it unnecessarily restricted its application to vehicles stopped on public highways. The Supreme Court has never limited the automobile exception such that it would not apply to vehicles parked on private property. Our Court has held that there is no reasonable expectation of privacy in a vehicle parked on private property yet exposed to public view. *See Thims v. Commonwealth*, 218 Va. 85, 93, 235 S.E.2d 443, 447 (1977).

The Court of Appeals cited *Coolidge v. New Hampshire* and *California v. Carney* but those cases did not distinguish the automobile exception on a public roadway versus on a private driveway. Instead, the Supreme Court in *Carney* extended the automobile exception to a "fully mobile motor home" parked in a lot[9] and held that no search warrant was necessary so long as police had probable cause to believe the vehicle contained contraband. 471 U.S. at 393. The Court focused on the mobile characteristics rather than the exact location of the motor home. *Id.*

> First, the vehicle is obviously readily mobile by the turn of an ignition key, if not actually moving. Second, there is a reduced expectation of privacy stemming from its use as a licensed motor vehicle subject to a range of police regulation inapplicable to a fixed dwelling. At least in these circumstances, the overriding societal interests in effective law enforcement justify an immediate search before the vehicle and its occupants become unavailable.

*Id.*

Similarly, the Court of Appeals' reliance on *Coolidge* is misguided.

> Although heightened privacy interests may be triggered when a vehicle is encountered on private property, the *Coolidge* plurality

---

[9] The Supreme Court's opinion in *California v. Carney* did not specify whether the San Diego parking lot where the defendant had parked his "fully mobile motor home" was a public facility or a privately owned lot. 471 U.S. at 388.

15

opinion cannot be fairly read to create a bright-line rule precluding warrantless searches on private property under all circumstances.

*Brookins*, 345 F.3d at 237. *Brookins* involved a motion to suppress narcotics evidence discovered when police, without a warrant, searched a car which was parked on a private driveway in Suffolk, Virginia. *Id.* In that highly analogous case, the United States Court of Appeals for the Fourth Circuit rejected the district court's application of a "bright-line rule, whereby the automobile exception may never apply when a vehicle is stationed on private, residential property." *Id.* In *Brookins*, an individual suspected of selling crack cocaine "fled the scene in [a] Ford Expedition." *Id.* at 234. Police later observed the Ford Expedition parked in the driveway of a private residence, and they walked onto the property to conduct a search which revealed drug paraphernalia. *Id.*

Just as the police in *Brookins* discovered contraband when they searched the Ford Expedition on private property, Officer Rhodes also discovered contraband when he searched the motorcycle parked at Collins' residence. By lifting the tarp and discovering the VIN, Officer Rhodes verified that the motorcycle was indeed stolen, and therefore constituted contraband. Accordingly, we hold that Officer Rhodes' search of the motorcycle was permissible under the automobile exception.

The dissent contends that "Officer Rhodes did not search the motorcycle, he searched the tarp." This argument ignores the fact that Officer Rhodes' stated purpose in lifting the tarp was not to determine whether the tarp covered a motorcycle, but rather to verify the identity of the partially covered motorcycle and record its VIN. At the suppression hearing, Officer Rhodes testified that "to determine if this was the motorcycle that I was, in fact, looking for . . . . I removed the cover then I ran the tag on that motorcycle . . . . I got the VIN number off the motorcycle and then ran that as well." The dissent plainly acknowledges that "the shape and

16

contours of the object were visible through the tarp and suggested the object it covered was an extended motorcycle . . . . the lower half of the front wheel of the motorcycle was exposed to view outside the tarp." Consequently, Officer Rhodes knew that the object being searched was a motorcycle partially covered by a tarp.

The dissent argues that the Commonwealth characterized the search as one of the tarp. However, the very first sentence uttered by the Commonwealth's Attorney during the suppression hearing described Officer Rhodes' actions as a search of the motorcycle.

> The search that Officer Rhodes conducted of the orange
> motorcycle September 10th, 2013 was reasonable and lawful. The
> Supreme Court has long recognized an automobile exception to the
> traditional requirement of probable cause [and] a warrant.

At trial and on appeal Collins has never specifically challenged Officer Rhodes' uncovering of the tarp as a distinct search. Instead, Collins has consistently characterized Officer Rhodes' conduct as an "illegal trespass" which revealed the motorcycle's VIN. In his brief to this Court Collins maintained that:

> Officer Rhodes trespassed onto private property. . . . , physically
> removed the tarp from the motorcycle[,] and *conducted a search of
> the motorcycle*.

(Opening Br. at 13-14) (emphasis added). Additionally, the defendant's own characterization of the issue is found in his argument that "[t]he Court of Appeals erred in holding that exigent circumstances justified the officer's warrantless entry onto the property and *the search of the motorcycle*." *Id*. at 24 (emphasis added).

The dissent relies on *New York v. Class*, 475 U.S. 106 (1986). In that case, the United States Supreme Court considered whether a police officer violated the Fourth Amendment when,

17

without a warrant, he searched a car by moving paperwork on the dashboard to verify a VIN.[10]

The Court in *Class* held that:

> We think it makes no difference that the papers in respondent's car obscured the VIN from the plain view of the officer. We have recently emphasized that efforts to restrict access to an area do not generate a reasonable expectation of privacy where none would otherwise exist.

*Id.* at 114 (citing *Oliver v. United States*, 466 U.S. 170, 182-84 (1984)). Just like the police officer in *Class* who removed papers from the dashboard for the purpose of obtaining the VIN, here Officer Rhodes removed the tarp in order to reveal the VIN on a motorcycle he believed to be linked to criminal activity. The defendant in *Class* challenged the search of the car, not the search of the papers on the dashboard. *Id.* Likewise, in this case, Collins challenged the search of the motorcycle, not the search of the tarp.[11]

---

[10] "In *Class*, the Supreme Court determined that in light of the important role VIN's play in the pervasive governmental regulation of automobiles, a 'motorist must surely expect that . . . regulation will on occasion require the State to determine the VIN of his or her vehicle.' [475 U.S.] at 113. This fact, coupled with the diminished expectation of privacy inherent in automobiles generally, led the Supreme Court to hold that there is no reasonable expectation of privacy in a VIN." *State v. Geissler*, 11 P.3d 1120, 1122 (Idaho Ct. App. 2000) (citing *Class*, 475 U.S. at 114).

[11] When a police officer lifts a tarp and reveals contraband, courts typically describe the search as a search of the contraband rather than a search of the tarp itself. Several cases from other jurisdictions help to illustrate this point.

In *State v. Allen*, 166 P.3d 111 (Ariz. Ct. App. 2007), a police officer investigating a hit-and-run involving a red car came upon a red coupe that was partially covered by a tarp. The officer lifted the cover and observed damage to the vehicle consistent with the accident. *Id.* at 112. The defendant later moved to suppress the evidence of the damage to his vehicle. *Id.* The Arizona Court of Appeals held that lifting the car cover did not constitute an unlawful *search of the vehicle* under the Fourth Amendment. "The lifting of the car cover to view the exterior of the vehicle . . . did not invade any reasonable expectation of privacy." *Id.* at 117.

Similarly, in *State v. Tegland*, 344 P.3d 63 (Or. Ct. App. 2015), a homeless defendant was living in a shelter he built using a grocery cart, a wooden pallet and multiple tarps. *Id.* at 65. Police lifted up the tarp and discovered methamphetamine paraphernalia. *Id.* The trial court denied the defendant's motion to suppress in which he challenged the search of his "residence." *Id.* at 65-66. The Oregon Court of Appeals affirmed, characterizing the search as a lawful search of the interior of the defendant's makeshift residence–not a search of the tarp itself. *Id.* at 68-69.

C.  Right Result for a Different Reason

"An appellate court may properly affirm a judgment appealed from where the court from which the appeal was taken reached the correct result but assigned a different reason for its holding."  *Rives v. Commonwealth*, 284 Va. 1, 2, 726 S.E.2d 248, 250 (2012).  The "right result for the wrong [or different] reason" doctrine is only applicable where the "right reason" can be fully supported by the evidence in the record and where the development of additional facts is unnecessary to support it.  *Perry v. Commonwealth*, 280 Va. 572, 579-80, 701 S.E.2d 431, 435-36 (2010).  Recently, in *Ricks v. Commonwealth*, 290 Va. 470, 480, 778 S.E.2d 332, 336-37 (2015), we affirmed a decision by the Court of Appeals to reverse a defendant's conviction even though we articulated an entirely different rationale.

Here, the facts necessary to resolve this case under the automobile exception to the warrant requirement of the Fourth Amendment were established in the record before the trial court.  Therefore, Officer Rhodes' search of the motorcycle was justified and we will affirm the judgment of conviction as "the right result for a different reason."

III.  Conclusion

For the reasons stated, we will affirm the judgment of the Court of Appeals.


*Affirmed.*

---

*See also United States v. Rosado*, 1994 U.S. Dist. LEXIS 8617, at *12 (S.D.N.Y. June 27, 1994) (unpublished) (citing *New York v. Class*, 475 U.S. at 114) ("The placement of the tarp on defendant's car was insufficient to create a privacy interest in the license plate number, which like the VIN, is an identifying characteristic needed for the government to regulate and identify automobiles.");  *State v. Emmons*, 386 N.E.2d 838, 842, 844-45 (Ohio Ct. App. 1978) (under the automobile exception set forth in *Carroll v. United States*, detectives were justified in "examining movable personal property" by lifting tarps covering two stolen motorcycles parked in a private driveway despite having no search warrant or consent to search).

JUSTICE MIMS, dissenting.

The majority holds that Officer Rhodes' search was permitted under the automobile exception to the Fourth Amendment's warrant requirement. However, Officer Rhodes did not search an automobile, he searched a tarp. I therefore must respectfully dissent.

The majority accurately recounts the relevant facts. Officer Rhodes went to a house shown in Collins' Facebook photograph.[1] There, Officer Rhodes saw from the public street an object covered by a white tarp on the paved driveway running alongside the front yard. The shape and contours of the object were visible through the tarp and suggested that the object it covered was an extended motorcycle similar to the one he had attempted to stop a few weeks earlier. The lower half of the front wheel of the motorcycle was exposed to view outside the tarp and its features were also similar to those of the motorcycle he had attempted to stop. Officer Rhodes then entered the driveway, approached the motorcycle parked beside the house, removed the tarp, and exposed the vehicle identification number. Using the vehicle identification number, Officer Rhodes learned that the motorcycle was stolen and arrested Collins.

The majority holds that Officer Rhodes' warrantless search was permitted by the automobile exception. However, the automobile exception permits a warrantless search *of* a vehicle, not *for* a vehicle. *See Maryland v. Dyson*, 527 U.S. 465, 466 (1999) ("The Fourth Amendment generally requires police to secure a warrant before conducting a search. As we recognized nearly 75 years ago . . . , there is an exception to this requirement for searches *of* vehicles." (internal citations omitted) (emphasis added)). As the majority notes, the automobile exception, distilled to its essence, provides that "[i]f a car is readily mobile and probable cause

---

[1] The house was later established to be the home of Kandace Beach, Collins' girlfriend and the mother of his child, where Collins occasionally stayed overnight.

20

exists to believe it *contains* contraband, the Fourth Amendment . . . permits police to search the vehicle without more." *Id.* at 467 (internal quotation marks omitted) (ellipsis in original) (emphasis added). The motorcycle did not *contain* contraband, it *was* contraband; Officer Rhodes did not search the motorcycle, he searched the tarp.

Although the majority repeatedly says that Officer Rhodes "searched the motorcycle" and merely "remov[ed]" or "lift[ed]" the tarp, *supra* at 9, 16, the tarp was the only thing searched. Searching the tarp revealed the motorcycle. Once the motorcycle was exposed by searching the tarp, examining the motorcycle's vehicle identification number was not a search because vehicle identification numbers are not protected by the Fourth Amendment. *New York v. Class*, 475 U.S. 106, 113-14 (1986) (holding that there is no reasonable expectation of privacy in a vehicle identification number, which is required by law to be in public view while the vehicle is being operated). "The exterior of a car, of course, is thrust into the public eye, and thus to examine it does not constitute a 'search.'" *Id.* at 114.[2] In short, it does not matter that the motorcycle is a vehicle, because it was not searched. Accordingly, the automobile exception to the warrant requirement does not apply here.[3]

---

[2] The vehicle in *Class* had been stopped for being driven "above the speed limit [and] with a cracked windshield." 475 U.S. at 108. Unlike the vehicle in *Class*, the motorcycle here was parked in a private driveway rather than being operated on a public highway, and its exterior was not "thrust into the public eye" but was concealed from the public eye–by the tarp.

[3] Although the majority opinion says Collins did not challenge the search of the tarp, that statement is contradicted by the record. At the hearing on Collins' motion to suppress, the Commonwealth characterized the search as one of the tarp: "The removal of the tarp covering the motorcycle was lawful under the [Fourth] Amendment and the information gained from the removal should not be suppressed." Collins responded seconds later by arguing that "the automobile exception . . . is the search *of* the automobile not a search *for* an automobile." (Emphases added.)

The distinction is readily apparent. If a police officer lawfully stops a known felon and sees a pistol-shaped bulge in the pocket of a coat he is carrying and the grip of a pistol protrudes from the opening, the search that will ensue is one *of the coat*, not *of the pistol*, even if the search of the coat is *for* the pistol and a purpose of the search is to obtain the pistol's serial number,

21

There is no question that Officer Rhodes was entitled to observe whatever he could see from the street. *California v. Ciraolo*, 476 U.S. 207, 213 (1986) ("The Fourth Amendment protection of the home has never been extended to require law enforcement officers to shield their eyes when passing by a home on public thoroughfares.") He may even have been entitled to enter the driveway to get a closer look at the tarp or the part of the motorcycle already exposed to public view, perhaps to confirm his impression that the shape, contours, and wheel matched those of the motorcycle that had previously eluded him. *Oliver v. United States*, 466 U.S. 170, 180 (1984) (differentiating open fields, for which officers need no warrant to enter and observe what they see with their naked eyes, from curtilage).[4] But he was not entitled to search the tarp to reveal what it covered without a warrant.

---

which replicates an automobile's vehicle identification number in this example. 18 U.S.C § 923(i) (requiring all licensed firearms manufacturers or importers to engrave or cast a serial number on the receiver or frame of a firearm); 27 C.F.R. § 478.92(a)(1)(i) (specifying visibility requirements for such serial numbers); *see also New Jersey v. Harris*, 50 A.3d 15, 28-29 (N.J. 2012) (holding that there is no reasonable expectation of privacy in a firearm's serial number when the firearm is exposed to public view).

[4] As the Supreme Court has held, actions taken to expose a serial number or other identifying mark that is not already in plain view constitute a search. *Arizona v. Hicks*, 480 U.S. 321, 324-25 (1987) (holding that moving stereo equipment to obtain its serial number constituted a search). There is a "distinction between looking at a suspicious object in plain view and moving it even a few inches [that] is much more than trivial for purposes of the Fourth Amendment." *Id.* at 325 (internal quotation marks omitted). That is especially true where, as here, an independent object is moved to expose the serial number or other identifying mark.

[4] Based on the photograph taken by Officer Rhodes and admitted into evidence at trial, the driveway is the only route by which to travel from the street to the front porch and front door without walking on the lawn. However, the driveway extends past the house, running alongside it after the front yard ends, and continues well beyond the front porch and front door to allow vehicles to be parked beside the house. Officer Rhodes' photograph shows that the covered motorcycle was parked in this part of the driveway, beyond the front perimeter wall of the house, past the front porch and front door, and that it was merely feet–no more than the width of the sport-utility vehicle parked in front of it–from the side perimeter wall of the house.

The law "regard[s] the area immediately surrounding and associated with the home--what our cases call the curtilage–as part of the home itself for Fourth Amendment purposes. . . . This area around the home is intimately linked to the home, both physically and psychologically, and

Accordingly, I dissent from the majority's opinion that Officer Rhodes' warrantless search was permitted by the automobile exception to the Fourth Amendment's warrant requirement.

_____

is where privacy expectations are most heightened." *Florida v. Jardines*, 133 S. Ct. 1409, 1414-15 (2013) (internal quotation marks omitted).

I do not address the question of whether the part of the driveway where the motorcycle was parked, within feet of the side of a house in a residential suburban neighborhood and as immediately surrounding the home as possible without being inside it, was curtilage or open field for Fourth Amendment purposes. Searching the tarp without a warrant was unconstitutional even if the area where the motorcycle was parked is considered to be open field. *Husband v. Bryan*, 946 F.2d 27, 29 (5th Cir. 1991) (noting that the open fields doctrine permits observation only); *see also United States v. Dunn*, 480 U.S. 294, 304 (1987) ("[T]here is no constitutional difference between police *observations* conducted while in a public place and while standing in the open fields." (emphasis added)); *Allinder v. Ohio*, 808 F.2d 1180, 1185 (6th Cir. 1987) (noting that the doctrine allows officers to enter open fields but not to search personal effects found there).